HANNAH V. GALLAGHER et al.

*v.*

ASPHALT COMPANY OF AMERICA.

[Decided May 16th, 1904. Filed October 17th, 1904.]

1. The United States circuit court in New Jersey had, in a suit by a foreign creditor of a New Jersey corporation, appointed a receiver, who had taken charge of all the assets of the corporation that were capable of being seized and had undertaken the collection of amounts due from stockholders on account of unpaid subscriptions, and in such suit the federal court had also issued an injunction against the insolvent corporation in the terms prescribed by the New Jersey statute, *P. L. of 1829 p. 59 § 6; Corporation act of 1896 §§ 65, 66. Quære.* Whether this suit in the federal court was the New Jersey statutory equitable action or some dissevered part of such statutory action.

2. The equitable action under the above-cited statute was then commenced in the court of chancery of New Jersey, and a final decree was made therein that an injunction issue disabling the corporation from exercising its franchises, but the application for a receiver upon the final decree was denied. *65 N. J. Eq. (20 Dick.) 258.* The motion for a receiver being now renewed, and it not appearing that there were assets beyond the scope of the federal receivership—*Held*, that the motion should be denied.

3. Nature of the New Jersey statutory action in. equity against an insolvent corporation, and the extent to which the federal court has taken jurisdiction of it on the ground of diversity of citizenship, considered.

On application for receiver.

*Mr. Charles E. Hendrickson, Jr.,* and *Mr. Newlin* (of Pennsylvania), for the complainants.

*Mr. Rynier J. Wortendyke, Mr. A. H. Wintersteen* (of Pennsylvania) and *Mr. Tolles* (of New York), for the defendant.

STEVENSON, V. C. (orally).

I laid this case over last week for decision to-day, because I desired to examine the opinions of the learned judges of the cir-

cuit court of appeals which relate to the jurisdictional questions in this case and which have been delivered or published since I delivered my original oral opinion upon which an injunction was granted in this cause. I have not had any opportunity to refer to the papers, the affidavits and other papers that were read last week. So far as the branch of the case was concerned, which required for its treatment reference to those affidavits, I was prepared last week to announce the conclusion which I formed and still entertain. But during the week I have tried, with some care, to examine the opinions of the federal court, which I have referred to, in order to aid me in determining the very important question what jurisdiction has this court now in this cause to appoint a receiver. If I had reached a conclusion that the settled federal law excludes the court from exercising such jurisdiction, it then would be unnecessary for me to entertain the question addressed to the discretion of the court whether in this particular case, at this time, a receiver ought properly to be appointed. I wish very much that I had the time to prepare a written opinion upon this first branch of the case, because it is something to be handled with the utmost delicacy and care. It is absolutely impossible for me to undertake that work in the present state of my engagements, and I shall therefore try to indicate to counsel the view that I have come to entertain on this very important subject. It is quite important for counsel to know what view the court takes, because this application, if unsuccessful now, may be renewed at a later day.

This bill was filed under our Insolvent Corporation act, as we have got to calling it, by a complainant claiming to occupy the position of a creditor. The bill invokes the statutory jurisdiction of this court over insolvent corporations. In determining any question of jurisdiction, such as is before the court now, it is, in my opinion, of the utmost importance that a correct view should be entertained of the exact nature of this statutory action. And I may say here that the view which I entertain of the nature of this statutory action is in many respects

radically different from that which is indicated in the opinions of the learned federal judges to which I have referred.

In my former opinion in this cause I pointed out the origin of this proceeding. It had its origin in an act of the legislature of the State of New York, passed in 1825. The statutory remedy was prosecuted under that act by the attorney-general of the state, although a creditor was permitted to bring the suit himself. If you go to the very origin of our act you find that the legislative intent is to provide a means by which, on behalf of the public, the corporate existence or the corporate operations of a creature of the legislature may be terminated and by which, to use a briefer expression, corporate franchises are declared forfeited to the state. That is the fundamental conception of this whole statutory proceeding. It is not a proceeding by a creditor to collect a debt. It is not a proceeding by a stockholder to enforce his rights as a member of the corporation. The legislature of the State of New Jersey passed the first act, the act which now exists in the form of sections 65 and 66 of our present Corporation act, following this New York model as a part of an act to *prevent fraud* by incorporated companies. It was not an act regulating a creditors' suit. It was a radically different statute from the one that I referred to last week, enacted by the legislature of Delaware, by which, when a corporation becomes insolvent, it is liable to have its assets seized, sequestrated and administrated for the benefit of creditors. The fundamental idea of the act was to prevent a corporation from going on in business when the interests of the stockholders and the safety of the public, including, of course, the stockholders and creditors, required that its franchise should be forfeited to the state. That is indicated in the title of the act, and every provision of the statute bears out that construction. It is true that the legislature saw fit to permit this statutory remedy for the protection of the public and the prevention of fraud to be instituted by any stockholder or any creditor. But it does not follow from that that what was done was to establish a stockholders' suit or a creditors' suit. The fact that it was not a creditors' suit is sufficiently indicated

by the alternative—either a stockholder or a creditor may institute the suit. If, when a creditor institutes it it is a creditors' suit, it would seem to follow that when a stockholder institutes it then it is a stockholders' suit.

Now, the slightest reflection upon the nature of a creditors' suit against a corporation and a stockholders' suit against a corporation will show how radically different those two things are. When we have either a creditor or a stockholder, qualified to appear as the actor, to set in motion the machinery of the court for the accomplishment of justice, for securing this important remedy on behalf of the public for the prevention of fraud, certainly there is a very strong indication that what the statute is aimed to secure is the redress or the prevention of a public wrong rather than the enforcement of a private right— a private right either of a stockholder *qua* stockholder, or of a creditor *qua* creditor.

About forty or fifty years ago, Chancellor Williamson, in the leading case of *Rawnsley* v. *Trenton Life Insurance Co., 9 N. J. Eq. (1 Stock.) 95,* said with that clearness which characterized almost everything that he ever did say, it is not the particular grievance of the party complainant which is redressed in this proceeding; it is the public grievance. I am giving substantially his language; I have recently had occasion to quote it in an opinion. It is not, he says in substance, the private interest of the party complainant; it is the public interest which is cared for, including the general interest of the stockholders and creditors.

The view that I entertain of the character of this proceeding is that it is more in the nature of a public action brought not in the name of the attorney-general but brought by direction of the state in the name of any person who, as stockholder or creditor, is so interested in the assets of the corporation as to have an interest in instituting the statutory suit. We find the same principle illustrated throughout our jurisprudence. A criminal law is enforced, or a *quasi* criminal law, by *qui tam* actions, actions for penalties, where private prosecutors are allowed to intervene. The state relies upon the private individual to in-

stitute the action, the primary object of which is the protection of the state. I take it that in this case the substitution in New Jersey of the attorney-general as the necessary actor in this case by any stockholder or any creditor was made simply because the legislative policy could be, would be inevitably, carried out more fully in greater numbers of instances by leaving the power to institute the proceeding with a stockholder or a creditor—any stockholder, or any creditor; because that being so, as soon as the condition came into existence, which it is the intention of the act to prevent or to remedy, some stockholders or some creditor would have sufficient interest in the assets which would be distributed as the result of the final decree to set the machinery of the court in motion to accomplish directly the object, and only essential object, of the suit, namely, the placing of the corporation under disabilities with reference to the exercise of its franchises. That this is not a creditors' suit, but that it is such a *quasi* public proceeding, I think is well illustrated by the fact that the suit can be prosecuted to a final decree and the corporation can be placed under disabilities, and then an order can be made dissolving the corporation, precisely as has been done in this case, without administering any assets and without there being any assets capable of administration by this court. I might say in this connection that Chancellor Walworth indicated this view of the New York statute within five or six years after it was first passed. I cited the case in my former opinion in this case. He said, in substance, that this was an instance where the creditor—I think at that time the stockholder was not permitted to bring suit in New York—the creditor was allowed to bring an action to secure a forfeiture of the corporate franchises.

Now, that being the view which I have entertained, and which I still entertain, and I think it is the view entertained generally in the State of New Jersey, I have difficulty in construing and applying the views expressed by these learned federal judges, because it is very plain that they look at the whole thing in a different way, and they regard this proceeding as a mere

creditors' suit, and they regard the decree for an injunction and a receiver as merely enforcing the private right of the creditor.

There are a good many questions which might have been discussed and might have been settled by these learned federal judges, but they are neither discussed nor settled. The view which I have indicated perhaps supports the theory that this is not a civil action within the meaning of the Judiciary act. It perhaps supports the view that the controversy in the cause is not wholly between the particular complainant or petitioner, who happens to be a non-resident, and the New Jersey corporation. If Chancellor Williamson was right when he said that the grievance redressed in this cause was not the particular grievance of the stockholder or creditor who happened to set the machinery of the court in motion for the benefit of the public—if he was right, why, then, there are certainly strong grounds for holding that the controversy is not wholly between citizens of different states.

In this connection it is worth while to note that, according to the well-settled doctrine of this court, while this suit is an action *inter partes* down to the time for the decree for an injunction, it then ceases to be an action *inter partes*, the complainant no longer controls the cause, and the stockholders and creditors have to be brought in. I never heard of a decree fixing the *status* of the corporation as one under disabilities, with reference to the exercise of its franchises being vacated without notice to all the stockholders and all the creditors of the corporation. That is the sort of a *status* you have as the result of a decree in this suit *in rem*. Very many of our chancellors have remarked—I think, certainly, the idea is expressed in a number of reported cases—that in fact all of the stockholders and all of the creditors constitute a single party complainant in this proceeding. This statement is based on the idea that the actor who originates the proceeding is not acting in a private capacity, merely coming into court with his own private grievance as a creditor and seeking a means of collecting his debt. Nor is he acting on his own behalf and as the representative of creditors with a common grievance which such creditors,

as a class, have against the defaulting debtor corporation. Nor is he acting, in case he is a stockholder, on behalf of the stockholders as a class for the redress of any injury to the rights of such stockholders. When a corporation is hopelessly insolvent, its stockholders are interested in a variety of ways in having its activities perpetually enjoined and its assets equitably administered. In the same case creditors have a very great interest, in some respects the same but in others widely different from that of the stockholders. The public at large, as has so often been pointed out, has a further distinct interest in preventing an insolvent corporation from contracting obligations and continuing its business operations in which it may deceive new parties and thereby perpetrate fraud.

All these parties complainant, with their various and different injuries to prevent or injuries to redress, unite in securing the accomplishment of their respective purposes by having our statutory action prosecuted to a decree which disables the insolvent corporation from exercising its franchises. The extent to which the various classes to which I have referred derive any benefit from the prosecution of the statutory action to a final decree, or beyond that point, of course, depends upon the circumstances of each particular case. But the object of the suit, it seems to me, cannot be determined by considering whether the public, by the attorney-general, or a creditor alone, or on behalf of himself and all other creditors, or a stockholder alone or on behalf of all the stockholders, as a matter of fact, happens to institute the action in a particular case.

Although the statute does not provide that the bill or petition shall state that it is filed on behalf not only of the petitioning stockholder or creditor but for the benefit of all the stockholders and creditors who come into the suit—although such statement is unnecessary in the bill or petition—it is almost universally inserted. While there may be some difference of opinion as to the right of a stockholder or creditor to force his way into a pending suit and be made a party complainant, I strongly incline to the view that, subject to the regulation by the court, such intervention will be allowed, and the particular

stockholder or creditor who has started the suit cannot arbitrarily exclude these other parties equally interested from coming into a suit which, when the decree goes, confessedly will be beyond his control. At any rate, it is the uniform practice to admit stockholders and creditors who apply to be made parties complainant, and while I have not lately looked into the matter I do not recall any case where it has been directly held that the original complainant or petitioner can arbitrarily prevent such intervention.

That our statutory action against an insolvent corporation, the only essential object of which is to place the corporation under disabilities, is not in fact the personal action of the particular stockholder or creditor who is authorized to bring the action, and who may be induced to bring it from a variety of selfish motives, is illustrated by the nature of the final decree which the actor, the creditor, we may say, obtains in his suit. He obtains no decree which necessarily benefits him personally. Nor does he obtain any decree which he owns or controls as a representative of or trustee for others. The decree, from the moment it is entered, is beyond his exclusive control and stands for the benefit of all the creditors and stockholders equally. This decree, while fixing the *status* of the complainant as a creditor for the purpose of qualifying him to sue, does not make it *res adjudicata* that he is entitled to $1 of the assets. He is obliged, after the final decree for an injunction has been obtained upon his motion and through his instrumentality, to prove his claim against the assets precisely as all the other creditors must prove their claims, and his entire claim may be rejected. He may thus utterly fail to secure the object which he had in view in bringing the suit, but the statutory object of the suit—its only legal object—is fully accomplished. There certainly seems to be grounds for arguing that the "matter in dispute" in this suit *in rem* is the *res, i. e.,* the *status* of the defendant corporation with respect to the exercise of its franchises, and that this "matter in dispute" remains the same whether the complainant alleges himself to be a creditor and is inspired by the hope of a dividend, or alleges himself to be a stockholder whose sole ob-

ject in prosecuting the suit is to stop the operations of the corporation and thereby ward off a liability or an increase of liability on a stock subscription, or whatever, among numerous other possible motives, may actuate the complaining stockholder or creditor in instituting the litigation.

I did not mean, however, to deal at length with these various questions, because the federal courts in these two cases which have been cited pass over them.

What, then, have the federal courts decided as bearing upon the jurisdiction of this court and of their own court under this act? They do not say that a stockholder may maintain this suit in the federal court. There is no discussion of that question. Whether a Pennsylvania stockholder could initiate this proceeding in the United States federal court, I do not know. If the federal courts had decided that matter it would very greatly aid me in determining what the present *status* of this jurisdictional question is. And in both the cases which have been cited (*United States Shipbuilding Co.* v. *Conklin, 126 Fed. Rep. 132,* and *Land Title and Trust Co.* v. *Asphalt Company of America, 127 Fed. Rep. 1*), in the opinion of Judge Acheson and in the opinion of Judge Gray, the utmost pains are taken to exclude from consideration the question whether a general creditor, without a judgment or without a lien, is qualified to maintain this action, where there is diversity of citizenship, in the United States circuit court. I must confess that if that question had been decided by the federal courts it would throw great light upon the doctrine which the federal courts mean to enunciate, or will yet enunciate, in regard to this whole question of jurisdiction. They do not find it necessary for the purposes of maintaining the jurisdiction, in either of these cases, to decide whether the stockholder, being a citizen of another state, can have a standing in the United States circuit court to initiate this suit. Nor do they decide whether the foreign creditor, who has the standing only of a general creditor, an unsecured creditor, can institute it.

Without discussing the question whether these deliverances of these learned judges are necessarily a part of the *ratio de-*

*cidendi* of the cases, or are by way of *dictum,* taking the state-
ments as indicating the law of the federal courts, I can only
reach this conclusion: that (and I may say here that the con-
clusion is based not only upon the deliverances of the federal
courts but upon the careful manner in which they abstain from
deciding some of these other questions) the doctrine seems to be
established by these cases that where the complainant is a creditor
of the insolvent corporation, holding a lien upon all or any of the
assets of the corporation, he then is qualified under the limita-
tions of the constitution of the United States, of the statutes of
the United States and of the rules of practice of the federal equity
courts, to come into the circuit court of the United States and
prosecute so much of this action as these learned judges find to
be a creditors' suit.

Now, whether the decision goes any further than that, I
freely confess I do not know. I cannot discover upon reading
these opinions whether it is held that this injunction that was
granted, restraining the corporation from the exercise of its
franchises, is the statutory injunction which suspends perma-
nently the power of the corporation to exercise its franchises, or
whether it is only an injunction in aid of the effort of the com-
plainant to get payment of his debt by sequestration of the
assets of the corporation. I incline to think that the latter is
the true view which the federal courts take. These federal
courts regard the whole proceeding here as a statutory action
for redressing the grievances of creditors, especially for the re-
dress of the grievance of the particular creditor who files the
bill. That seems to be the view. And, if that be true, then the
injunction is ancillary to the obtaining of that relief. It cer-
tainly is noteworthy that the next step in this New Jersey suit,
which I have described, in the language of Chancellor Walworth,
as an action practically for the forfeiture of the franchises of
a corporation, the next step is an order dissolving the corpora-
tion. And yet, for some reason, the parties interested refrained
from making application to the federal court for an order of
dissolution, and two or three weeks ago came here into this court
and took such an order, which, of course, has to be filed with

the secretary of state. Whether the federal court would have made such an order, or, if so, it would have been such an order as under the statute should be filed, or could be filed, in the office of the secretary of State of New Jersey, I do not stop to inquire. But all of the parties to this litigation seem to have conceded that this court had jurisdiction of that part of the action which is directed toward fixing permanently the *status* of the corporation. That seemed to be generally conceded.

And now we come right to the sharp point, whatever they may think in the federal court; no statutory receiver can be appointed in this court excepting at the time when the statutory injunction is ordered or at some time thereafter. In other words, the ordering of the statutory injunction, which places the corporation under disabilities with reference to the exercise of its franchises, is the jurisdictional fact, the condition precedent which must occur before any statutory receiver can be appointed. That, I think, has been the settled rule of the court from the very origin of our statute.

Now, if the federal courts have entertained this suit simply so far as it is a proceeding to sequestrate assets for the benefit of creditors, and ancillary to that have granted an injunction, which, of course, they had a perfect right to do, such injunction is not the statutory injunction, and the receiver appointed in the federal court would not therefore get title under our statute. The result would be that this court had full jurisdiction to grant the statutory injunction, which I have held to be the only necessary object of the suit, disabling the corporation, putting it permanently under disabilities, preventing it from exercising its franchises. I say this court then had jurisdiction to do that. No other court has done that thing, or undertaken to do that thing.

Of course, I am not either commending or criticising the view of our statutory action which permits its severance into two distinct actions which can be prosecuted in two different courts at the same time. I am merely endeavoring to ascertain the principle controlling the jurisdiction of the federal court and of

this court, which seems to have been enunciated in these recent federal decisions, either by way of *dictum* or otherwise.

And now we are back precisely where I thought we were when I originally decided the cause. We are back at the question, the court having discretionary power to appoint a statutory receiver, should such power be exercised? The court is not obliged to appoint the statutory receiver. The whole proceeding may end in placing the corporation under disabilities by the injunction; enjoining it from exercising its franchises; or the proceeding may go a step farther and there may be an order dissolving the corporation, and there may never be a receivership in this court, and there may never be any reason why there should be. I indicated to counsel when the application was made heretofore, when I had not any aid from the decisions of the federal courts in determining any of these questions of jurisdiction, that they must come here and show some good reason why a receiver should be appointed before any would be appointed. This corporation might have been stripped of its assets by a general creditors' suit, such as we have exhibited in the case of *Wetherbee* v. *Baker, 35 N. J. Eq.* (*8 Stew.*) *501.* The corporation might have been adjudged an involuntary bankrupt and have had all of its assets vested in a trustee. That would not interfere with the prosecution of this suit down to the decree for the disabling injunction and beyond that to the order dissolving the corporation.

The question is, *cui bono?* That is the question for the applicant here, for the applicant to answer.

Well, this is the situation as I understand it, although I cannot recollect the facts or state them as clearly as I could last week. This is the situation as I recall the affidavits. The federal receiver, no matter what the theory of the jurisdiction of that court may be, and no matter what the nature of the injunction granted by the circuit court in fact may be, the federal receiver has undertaken the work of sequestrating all the assets of the insolvent corporation. The federal court of appeals holds that the circuit court of the United States has full jurisdiction of the corporate assets, and it has, of course, jurisdiction

over the corporation. In this case the corporation came in
voluntarily and subjected itself to the jurisdiction of the federal
court, consented to the injunction, consented to the final de-
cree and consented to the order appointing the receiver. And
this receiver has not only taken into his custody all the assets
which are capable of being seized, but he has actually undertaken
the work of collecting for the benefit of the creditors of the
corporation the amounts due from stockholders on account of
unpaid subscriptions. He is engaged in that work at the pres-
ent time. He has brought a suit against some of the stock-
holders, and he has made an adjudication that he will not
bring any suit against certain other former stockholders, be-
cause he thinks such suits would only be a waste of the assets
in his hands, because the prospect of recovery is hopeless. That
I understand to be the situation disclosed.

Now, this particular creditor wants to have those particular
stockholders attacked by the receiver. This particular creditor
wants to have the efforts made to recover a very large amount
of money which apparently would be recovered if there is any
liability. Well, the question is, why should this court appoint
a receiver and permit such receiver to shoulder his way into this
business of enforcing the liability of these stockholders and
bring a suit which the federal receiver has declined to bring?
It is the duty of the federal receiver to bring the suit if the
circumstances justify it. But if he will not bring it nobody has
suggested that the federal court is not open to an application
on the part of this particular creditor, the complainant here, to
permit her to file a bill and use the receiver's name in enforc-
ing this liability which the federal receiver thinks, under the
advice of his counsel, cannot be enforced. No such application
has been made. The court has not declined to receive and act
favorably upon such application upon the usual terms, which
involve the giving of security to the receiver, indemnifying him
against all liability for costs. The complainant, the creditor
here, points out a somewhat unusual order; I am not going to
criticise it, for I do not know the circumstances under which
it was made; but the complainant points out a somewhat un-

usual order, which seems to prevent the receiver from bringing suits, or rather, I will not say that, which seems to discourage suits by erecting a somewhat peculiar fence around the receiver and around the stockholders whom the complainant wishes to. have sued. But, as was pointed out in the argument, and I think very satisfactorily, this order was only an offer, was only an order to be published under which creditors might come forward and act if they saw fit to do so. There is nothing in the order to prevent a creditor from walking into the United States circuit court and asking that court for permission to bring this suit at his own expense, he first indemnifying the receiver; and there is nothing to indicate that the court will not grant such an order. But I really consider this matter under protest, because it is not for this court to pass upon the action or non-action of the United States .circuit court. The remedy of this complainant is with that court. This court cannot hear these suggestions that were attempted to be made that this particular creditor cannot get justice in the United States circuit court for reasons which were not disclosed.. Of course,˙ this complainant can get justice there, and that court is open. If this complainant wants to have a receiver appointed in this court, I think she will have to show that there is some asset of this corporation which a receiver of this court can collect,ˌ or may collect, which the federal receiver has failed to collect, has not reduced to possession, has declined to undertake to collect, and that he, the applying creditor here, has exhausted the ordinary remedies, such as I have described, which are open to him in the federal court to bring about an effort to collect this particular asset. I am not indicating that this court will sit in judgment on the way in which the federal court discharges through its receiver its duties to the creditors of this corporation. Nothing of the kind. But if an asset appears to be entirely beyond the scope of the federal receivership, if it is something that stands apart which the federal receiver is not undertaking to realize and which the applying creditor here cannot reach through that receiver upon application to the federal court, why, then, we have the case of an asset that is entirely removed from

the scope of the suit of the federal court, and it may be that then it would be proper for this court to appoint a receiver. Such a receiver would not come in conflict in the slightest degree with the federal court receiver. He would simply be proceeding with the collection of an asset which the federal court, for one reason or another, had not undertaken to take into possession or deal with in any way or shape whatever.

These are the main reasons which lead me to the conclusion that while, probably, the federal law recognizes still that this court, in this cause, has exclusive jurisdiction of so much of the statutory proceeding as relates to the *status* of the corporation, to its permanent ability or disability with reference to the exercise of its franchises, with reference to a dissolution of it, and while, therefore, the only statutory injunction has been issued by this court and not by the federal court, and therefore the only statutory receiver can be appointed by this court; while that may be the truth, entirely consistent with the doctrines which the learned federal judges have enunciated, I think it is very plain that no case is made out for the appointment of a receiver at the present time. And I may say further that in my judgment the appointment of a receiver at the present time for the purpose of doing the thing which the complainant desires to have done would be against all the rules of comity, which are well settled and which always ought to be maintained. In my view it is of the utmost importance in these days when the federal courts and the state courts, in administering bankrupt laws and insolvent laws, and peculiar laws like this that we have now before us, are liable to come in contact, that the utmost care, the most scrupulous care, should be observed in the proceedings of both courts to prevent all unnecessary conflict. And in my judgment the complainant's application in this cause amounts to simply this: that she prefers to come to this court and willfully refuses to go to the federal court. She wants this court to consider that she cannot get justice, or full justice, in the learned and distinguished court—federal court—established here, and she therefore wants this court practically to sit in judgment upon what the other court has done, or, as she charges,

neglected to do, and appoint a receiver who will immediately undertake the work which is now under the charge of the federal receiver. I think it would be a gross violation of comity to appoint a receiver who would engage in any work of that kind.

The order, therefore, at the present time will be that no receiver is necessary and none will be appointed.

Mr. Hendrickson—You have not said anything in regard to the question of the necessity of other parties. You held the matter over a week, stating that you would want to consider also the question of whether all the necessary parties were before the court.

The Court—I have not found it necessary to pass upon that question, because, having reached the conclusion that your application should not be granted, I did not see any necessity for dealing with the question of parties. If I had reached the other conclusion that your application ought to be granted, why, then, under the well-settled practice of the court all the creditors and stockholders would be brought in before the appointment of a receiver would be made.

Mr. Hendrickson—That would only apply as to the permanent receiver and would not apply to the appointment of a temporary receiver?

The Court—The man who is appointed receiver upon the return day of the order to show cause, or upon the appearance of the corporation upon the filing of the bill, is the statutory receiver. He is appointed after the summary final hearing prescribed by the statute has been held, and this summary final hearing, under our practice and under a general principle of law and justice, can only be held after the corporation has been brought into court by notice, or has voluntarily appeared. The receiver so appointed takes title to the assets, and the further proceeding on notice to all stockholders and creditors effects, or may effect, merely a substitution of another person as receiver. There is no distinction between the titles of these two receivers, and the use of the term "temporary receiver," as applied to the first appointee, is liable to mislead. The term "temporary receiver," perhaps, might better be confined to the mere custodian

receiver who is often appointed upon the filing of the bill under the general equity power of the court, in order to preserve the assets from waste until the hearing can be had which will determine whether the corporation is to be disabled or not and its assets vested in a receiver.

In this case, if the conclusion had been that an order should be made appointing a receiver, the stockholders and creditors would have been brought into court on notice before any appointment would be made, because under the circumstances of this case delay in the appointment of a receiver could do no harm.