43 P.(2d) 1055

## COOPER et al. v. MANNING.

### No. 4062.

Supreme Court of New Mexico.

April 23, 1935.

D. A. Macpherson, Jr., of Albuquerque, foi appellant.

John F. Simms, of Albuquerque, for appellees.

WATSON, Justice.

Suing upon a promissory note, the receivers of an insolvent state bank were met with an answer challenging their title to the note. This answer was held insufficient on demurrer. Final judgment and this appeal followed.

The sole point of error relied on is that the appellees are not liquidating receivers

with title, but merely custodial receivers. And this is claimed because of the terms of the order or decree constituting the receivership, and particularly these:

"The court * * * finds that the defendant, The First Savings Bank and Trust Company of Albuquerque, New Mexico, a corporation, has suspended its ordinary business and is insolvent and is unable to and is not meeting the demands of its creditors in the usual course of business;

"Wherefore, it is ordered, adjudged and decreed that a receiver of The First Savings Bank and Trust Company of Albuquerque, New Mexico, a corporation, be appointed by this Court in accordance with the practice and usages of equity, with the usual powers and duties of receivers in equity."

It is not to be questioned that a prudent adherence to the statute would have suggested different decretal provisions. There should have been a finding that the bank, which had theretofore been taken over as being in an insolvent condition, could not "resume business or liquidate its business to the satisfaction of all of its creditors." Laws 1933, c. 32, § 1. The receivers should have been authorized "to take charge of such bank and wind up its affairs and the business thereof for the benefit of its depositors, creditors and stockholders." Id. The corporation should perhaps have been enjoined from "exercising any of its privileges or franchises," etc. Comp. St. 1929, § 32-174.

Nevertheless, when we once identify this as a statutory proceeding for winding up a banking corporation, as we did in Cooper v. Otero, 38 N. M. 164, 29 P.(2d) 341, the kind of receivership which must ensue and the powers which the receivers are to possess are matters so plainly indicated by the statute itself that the decree should not be subjected to fine analysis for inaccurate expression or inadvertent omission, the discovery of which could only subvert the statute, pervert the court's meaning, and result in confusion and perhaps in loss to the receivership and perhaps to those who have dealt with it.

We have no doubt that we should here take the court's finding of insolvency as the equivalent of the finding the statute contemplates. This is not to say that the corporation itself might not have objected to being kept out of its property and rights on that finding. So long as it acquiesces, however, we see no good reason for entertaining objection by others.

The decretal defect most strongly urged is the omission to enjoin the corporation from the exercise of its franchises. The serious character of this defect is said to be disclosed by Eagle Mining & Improvement Co. v. Lund, 15 N. M. 696, 113 P. 840, State ex rel. Parsons Min. Co. v. McClure, 17 N. M. 694, 133 P. 1063, 47 L. R. A. (N. S.) 744, Ann. Cas. 1915B, 1110. And those decisions, with others of this court, draw heavily upon the valuable expositions by Vice Chancellor Stevenson in Gallagher v. Asphalt Co. of America, 65 N. J. Eq. 258, 55 A. 259; Id., 67 N. J. Eq. 441, 58 A. 403, and in Pierce v.

Old Dominion, etc., Co., 67 N. J. Eq. 399, 58 A. 319.

Those decisions were concerned with corporations other than banks. It is unnecessary here to reconsider them or to indicate any view as to the meaning or effect of such a decree as this in the case of an ordinary corporation.

■ Because banks are peculiarly affected with a public interest, the Legislature has set them apart from corporations in general. They are governed by their own laws. It is true that in liquidating a bank the "proceedings shall otherwise be governed by the provisions of the general incorporation laws for the winding up of insolvent corporations." Laws 1933, c. 32, § 1. "Otherwise" of course means when there appears no special provision for banks. We do not resort to the general provisions until we have exhausted the special, and we always keep in mind the peculiar nature of banks and banking under our laws. If we thus approach a decree containing the finding of insolvency, which, after all, is the jurisdictional fact, it seems impossible to give great importance or significance to the failure to follow the statutory direction to enjoin the corporation from exercising its franchises.

Banks, unlike or to a greater extent than other corporations, are always subject to the supervisory and visitorial powers of the state. If thought to be in an insolvent condition, it is the duty of the bank immediately to suspend business. It is to be put into possession of or to be taken over by the state bank examiner. Comp. St. 1929, §§ 13-416, 13-418.

By operation of statute, not by any injunctive process, the corporation is ousted of the possession of "all its property and assets" (Comp. St. 1929, § 13-416) and of its power "to collect all debts, dues, claims and demands" (Id. § 13-421).

■ It may be 60 days later (Id. § 13-418) that the court first acquires cognizance or jurisdiction of the matter. The question then presented is a simple one. If the bank examiner's procedure has been regular, the court has but to determine whether the bank can "resume business or liquidate its business to the satisfaction of all of its creditors." If it cannot, liquidating receivers must be appointed upon whom the statute casts the title to the property and assets. Id. § 32-177; State v. First State Bank of Las Cruces, 22 N. M. 661, 167 P. 3, L. R. A. 1918A, 394; State v. People's State Bank & Trust Co., 23 N. M. 282, 168 P. 526.

Such being the law and the procedure, where is there room, after the adjudication of insolvency, for merely custodial receivers? The bank is insolvent; it must be wound up; that can be done only through receivers having liquidating powers.

What is the importance of the injunction here? It is not needed to inform the corporation that it must stop business. It had suspended long since, and been ousted of all of its important powers.

In short, insolvency is not only the jurisdictional fact; it is the determinative fact. Given insolvency, the consequences follow from the statute itself. For the court to refuse them would be illegal. We seek a le-

gal interpretation of the decree. We attribute to the court an intent to do what the law requires. The failure to enjoin as the law directs we attribute to inadvertence.

■ This is not said in approval of the omission of the injunctive feature of the decree. It may well be included, if for no other reason, because the statute may be construed so to direct. We do not say that some more or less important consequences may not attend the omission. We decide only that, when the corporation is a bank, the omission is not fatal to the vesting of full liquidating powers in the receiver. Comp. St. 1929, § 32-175, which authorizes the appointment of receivers "at the time of ordering said injunction, or at any time afterwards," must have a liberal construction in the case of a bank. The whole scheme of those provisions peculiar to banks suggests that it is the determination of insolvency that calls for the appointment of receivers.

It is open to question whether our statutes even contemplate the injunction when the insolvent corporation is a bank. In the case of the ordinary corporation, "any creditor or stockholder may * * * apply to the district court *for a writ of injunction and the appointment of a receiver.* * * *" Id. § 32-174. In the case of a bank, after the examiner shall have satisfied himself that the bank cannot resume business, the Attorney General, on being so advised, is to institute proceedings "for the purpose of having the State Bank Examiner *appointed as receiver.*" Laws 1933, c. 32, § 1.

Such seems to have been the view of several state bank examiners, Attorneys General, and district courts. Our records disclose lack of any injunctive order in several similar proceedings which have reached this court, viz., State v. First State Bank of Las Cruces, and State v. People's State Bank & Trust Co., supra, and State ex rel. v. Ryan (Attorney General v. Ryan), 27 N. M. 651, 204 P. 68. And in the two first mentioned we held, as above noted, that the title of the bank's property and assets vested in the receivers on their appointment.

However, we do not place the decision on the ground that the statute does not call for an injunction, but on the lesser ground that the failure to enjoin, even if the law contemplates it, cannot defeat the statutory purpose that the receivers shall have title to the bank's property and assets, to enable them to liquidate.

The judgment should accordingly be affirmed and the cause will be remanded. It is so ordered.

HUDSPETH and ZINN, JJ., concur.

BICKLEY, Justice.

I concur in the result.

SADLER, Chief Justice (specially concurring).

I concur in the result. Also in much that is said in the majority opinion written by Mr. Justice WATSON upon the purpose and effect of the provisions in the Banking Act

affecting the liquidation and winding up of insolvent banking corporations. And, if the mere determination of whether this was to be a liquidating receivership vel non were the decisive question, I could accept the reasoning which follows such a conclusion.

However, as I view the matter, the mere conclusion that a liquidating receivership is contemplated by given proceedings no more settles the question here at issue in the case of a banking corporation than it does in the case of any ordinary private corporation. The decisive question in the case before us is whether title to the corporate assets passed to the receivers appointed by the court. If it did so pass, and if it does pass in the case of a banking or any other corporation, it passes only at the time and in the manner prescribed by the statute. And I here refer to the insolvency statute, not the Banking Act, since it does not speak on the subject.

I entertain no doubt that a liquidating receivership was contemplated by the proceedings in which the appellees in this cause were appointed receivers of the First Savings Bank & Trust Company of Albuquerque, N. M. When Cooper v. Otero, 38 N. M. 164, 29 P.(2d) 341, was before us, that fact was taken for granted. The opinion in that case assumes, and correctly, I think, that a liquidating receivership was applied for.

But how and under what conditions does the receiver, even in a liquidating receivership under our Corporation Insolvency Act, take title to the corporate assets? It was not until the enactment of chapter 67, Laws 1915, relating to banks and banking, that we find specific direction, as we do in section 85 thereof, that "such [insolvency] proceedings shall be governed by the provisions of the general incorporation laws for the winding up of insolvent corporations." So this direction remained in identical language through various changes until the enactment of chapter 32, Laws 1933, when we find the slight amendment by the addition of the word italicized in the quotation to follow, to wit: "Such proceedings shall *otherwise* be governed by the provisions of the general incorporation laws for the winding up of insolvent corporations."

The enactment of this statutory direction was, however, more or less surplusage, in view of the holding of this court in State v. First State Bank of Las Cruces, 22 N. M. 661, 167 P. 3, L. R. A. 1918A, 394. We there called attention to the fact, in an opinion by Mr. Justice Roberts, that the provisions of our Corporation Insolvency Act, under section 1014, Code of 1915 (now section 32-234, Comp. St. 1929), by specific direction were made applicable to banking corporations. Hence it required no further legislative action to make it plain that banking corporations were just as much subject to the Corporation Insolvency Act as other corporations.

I turn then to an examination of the Corporation Insolvency Act to ascertain how the receiver appointed pursuant to its provisions acquires title. It is solely by force of the statute. Comp. St. 1929, § 32-177. Title acquisition, of course, must follow appointment of the receiver contemplated by the statute,

viz., the *statutory* receiver. *None* will question the assertion that a void appointment carries no title into the appointee.

Under Comp. St. 1929, § 32-175, it is provided, *touching the question when a receiver may be appointed,* as follows: "The district court, *at the time of ordering said injunction, or at any time afterwards,* may appoint a receiver or receivers," etc. (Italics mine.)

Our Corporation Insolvency Act, as has been many times mentioned by this court, was adopted from New Jersey. Vice Chancellor Stevenson, who displays a profound knowledge of the act which we adopted from his state, in two learned opinions states unequivocally that the court is without jurisdiction to appoint the statutory receiver until the statutory injunction authorized by the act has been ordered. Even though his remarks were unnecessary to a decision in either case,' in my opinion they furnish a correct construction of the language of the act. In Gallagher v. Asphalt Co. of America, 67 N. J. Eq. 441, 58 A. 403, 406, he said: "And now we come right to the sharp point, whatever they may think in the federal court: no statutory receiver can be appointed in this court excepting at the time when the statutory injunction is ordered, or at some time thereafter; in other words, the ordering of the statutory injunction which places the corporation under disabilities with reference to the exercise of its franchises, is the jurisdictional fact—the condition precedent—which must occur before any statutory receiver can be appointed. That, I think, has

been the settled rule of the court from the very origin of our statute."

Again, in Pierce v. Old Dominion Copper Mining & Smelting Co., 67 N. J. Eq. 399, 58 A. 319, 324, speaking upon the same subject, Vice Chancellor Stevenson said: "The power of the court of chancery under this statute, if such power exists, to strip a defendant corporation of the right' to exercise its franchises—to condemn it and suspend its life, if not put it practically to death, before giving it a hearing—has never, so far as I am aware, been exercised. Immediately upon filing the bill, also, a receiver of the corporate assets may be appointed in a proper case, without notice to the defendant corporation; but unless the defendant corporation has' appeared, and the 'summary hearing' has thereupon been held, and the statutory injunction has been ordered, such a receiver is a mere custodian, takes no title under the statute, and is appointed under the general equity power of the court, which always appertains to the court, whether exercising its ancient jurisdiction or some special and novel jurisdiction conferred by statute. One reason why novel statutory equitable actions are created is because the court of chancery is equipped with these special institutions, such as injunctions and receiverships, for the preservation of property and the accomplishment of justice. The language of our statute which prescribed the appointment of a receiver for an insolvent corporation has remained unchanged since its original enactment in 1829. The power of the court can only be exercised 'at the time of ordering

the said injunction, or at any other time afterwards.' No statutory receiver can be appointed unless the statutory injunction, which is the object of the suit, is also ordered or has been already ordered. It is perfectly plain that a mere restraining order, or a preliminary writ of injunction, 'limited' in its operation, is not a sufficient basis for the making of an order appointing the statutory receiver. Laws 1828–29, p. 60, § 8; Corporation Act (Laws 1896, p. 298, c. 185) § 66."

In Sacramento Valley Irrigation Co. v. Lee, 15 N. M. 567, 113 P. 834, and Eagle Mining & Improvement Co. v. Lund, 15 N. M. 696, 113 P. 840, 842, the territorial Supreme Court cited and quoted from the opinion of Vice-Chancellor Stevenson in the Pierce Case, touching the history and purport of the New Jersey act.

Again, in State ex rel. Parsons Mining Co. v. McClure, 17 N. M. 694, 133 P. 1063, 47 L. R. A. (N. S.) 744, Ann. Cas. 1915B, 1110, we cited his opinion in the Pierce Case and quoted approvingly a passage from his opinion in an earlier report of the Gallagher Case, 65 N. J. Eq. 258, 55 A. 259, 265, in which among other things, he said: "The discretionary power to appoint a receiver can only be exercised at the time the injunction is ordered, or at some time thereafter. * * *"

The New Jersey courts have consistently held, and we have followed them in holding, that the injunction order disabling the corporation is the final decree in such proceedings. It is, of course, from it alone that an appeal lies where only final judgments and decrees are reviewable. See the Gallagher and Pierce Cases from New Jersey, cited supra, and the New Mexico cases of Sacramento Valley Irr. Co. v. Lee, and Eagle Mining & Improvement Co. v. Lund, supra.

In Maxwell Lumber Co. v. Connelly, 34 N. M. 562, 287 P. 64, 66, we said: "The statutory proceeding by injunction and receiver to wind up an insolvent corporation has for its principal object the termination of the corporation's existence as a matter of protection to the public and the stockholders. It is in the nature of a quo warranto proceeding. The question of administering and distributing its assets is purely incidental and arises out of the necessities of the case."

The jurisdictional fact which must be found to warrant the ordering of injunction and the appointment of a receiver is insolvency. But a litigant may not appeal from a finding of fact, even though it be a jurisdictional fact. It is the relief predicated upon such finding which affords him the basis for review. In Eagle Mining Co. v. Lund, supra, the district court found the jurisdictional fact of insolvency and appointed a receiver. The order appointing a receiver failed to carry the statutory injunction. The insolvent corporation sued out a writ of error in this court from the order appointing a receiver. The territorial Supreme Court dismissed the same in an opinion which said: "The wording of the decree in the case at bar in itself indicates that the decree appointing such receiver should be merely an interlocutory order. Such being the case, the order as it now stands appointing a receiver, being pure-

ly interlocutory in form, is not subject to appeal or writ of error. If the decree appointing a receiver in this case had been drawn with an order or decree granting the injunction provided in the statute, there could be no question whatever but what such decree would be a final decree and as such subject to appeal or writ of error."

While it is true the Appellate Procedure Act in force at that time authorized appeals only from final decrees, and the act was later so amended as to authorize appeals from such interlocutory orders or decisions as practically dispose of the merits of the action, this circumstance has no material bearing on the point at issue. Indeed, it is difficult to understand how a mere order appointing a receiver could be considered such an interlocutory order as is appealable even under the amended Appellate Procedure Act.

And, if it is not appealable as the law stands to-day, as it certainly was not as it stood before appeals from interlocutory orders were authorized, a protesting corporation, banking or private, might find itself stripped of its entire assets through distribution by a receiver appointed by the court before opportunity for review was ever afforded it through entry of the final decree of injunction from which it might appeal or sue out a writ of error.

It so happened that, in the proceedings out of which arose the appointment of the appellees as receivers, the banking corporation acquiesced in the appointment of the receivers, by defaulting and failing to appear. It just so happened. Let us put in its place, however, in the proceedings with which we are concerned, a banking corporation which resisted and disputed the claim of insolvency and denied the right in movants to the appointment of receivers. The injunction here was not issued for more than a year after the appointment of the receivers. In the meantime the assets of the bank were being administered and distributed. And yet, unless we overrule Eagle Mining Co. v. Lund, supra, there was no order in the case from which the protesting and objecting corporation might have appealed.

I have heretofore indicated my opinion that title to assets of a bank in insolvency proceedings passes to a receiver appointed by the court in the same manner and subject to the same conditions as apply and govern in the case of any other insolvent corporation. The very fact that the statute ties authority in the district court to appoint a receiver to the time of ordering the injunction or at some time thereafter to my mind reflects an unwillingness on the part of the Legislature to invest the receiver with title until an injunction has disabled the corporation and thus rendered necessary the incidental purpose of administering and distributing its assets. Title investiture is only essential to the execution of this incidental purpose. A mere custodial receiver holding in the meantime, not having been invested with title, can convey none. And contemporaneously with entry of the injunction order, which alone can support appointment of the statutory receiver invested with title, there arises in the corporation a corresponding right to review such order.

Coming now to the situation in the case at bar, I agree with the opinion of Mr. Justice WATSON "that the decree [appointing receivers] should not be subjected to fine analysis for inaccurate expression or inadvertent omission. * * *" Nevertheless, I cannot find in the receivership proceedings warrant for holding these appellees statutory receivers, and hence invested with title to the corporate assets prior to the time when the order of injunction called for by the statute was actually entered, unless, as may be the case, we are entitled to give nunc pro tunc effect to the injunction order contemporaneous in point of time with the order appointing them receivers.

The appellees were appointed receivers of the First Savings Bank & Trust Company of Albuquerque in cause No. 20779 on the docket of the district court of Bernalillo county. On August 31, 1933, the court found insolvency and decreed that a receiver should be appointed. On September 7, thereafter, and pursuant to such decree, the appellees were named receivers. More than a year later, and on September 12, 1934, but prior to the institution of the present suit, the same court, with a different judge presiding, entered its order reciting that, at the time of the order adjudging the bank insolvent, "the court inadvertently omitted from said order the statutory injunction as provided for in section 32-174, Comp. St. 1929." It then ordered injunction.

The language of this order strongly suggests an effort, as in State ex rel. Parsons Mining Co. v. McClure, supra, to make a nunc pro tunc order, although lacking any express direction that it should be so entered. I am far from convinced that it does not have such effect. The court says that its omission to order injunction at the time of finding insolvency and authorizing receivership was "inadvertent." The statutory injunction was certainly authorized at that time, if, through inadvertence, it was not actually ordered.

But whether the subsequent order for injunction could have the legal effect of nunc pro tunc entry need not be determined. For here it is admitted the statutory injunction had been ordered before appellant was sued upon the note in question. If, under views which I have suggested but leave undetermined, title had not passed to the receivers theretofore; if, until the formal injunction order, the receivers were mere "custodians" (Pierce v. Old Dominion Copper Mining & Smelting Co., supra), or only "custodial receivers whose function is to preserve" (Smith v. Washington Casualty Ins. Co., 110 N. J. Eq. 122, 159 A. 510), they become something more now. Their status as "statutory receivers," whatever doubt may have beclouded the question theretofore, now becomes settled, fixed, and determined. From the actual time of the injunction order, if not before, by virtue of contemplated nunc pro tunc effect, they possessed all the rights bestowed by the statute upon receivers which it authorized, including possession of title. If held to be statutory receivers at the time of suing him, I do not understand appellant to question their right to maintain the action.

When Cooper v. Otero, supra, was before us, the absence of the statutory injunction was not noted. Its existence was assumed. The same appears to have been the case in State v. First State Bank of Las Cruces, supra, and State v. People's Savings Bank & Trust Co., 23 N. M. 282, 168 P. 526. In each of these two last-cited cases we held the receivers of the respective banks to have been invested with title to the corporate assets. But the fact that such receivers had been appointed without ordering of the statutory injunction went unobserved, and the existence of facts essential to the appointment of statutory receivers was presupposed.

For the reasons given I concur in the affirmance of the judgment appealed from.