[No. 1524, May 16, 1913.]

STATE ex rel. PARSONS MINING COMPANY, a Cor-
poration, Relator, v. J. T. McCLURE, Judge of the
District Court in the Fifth Judicial District of the State
of New Mexico, and the District Court of the Fifth
Judicial District of the State of New Mexico for the
County of Chaves, Respondent.

SYLLABUS (BY THE COURT).

1. A proceeding in insolvency against a corporation under
chap. 79, laws of 1905, is a transitory action in the nature
of quo warranto, and the venue thereof, under sec. 2950, C.
L. 1897, may be in the county where either the plaintiff or
the defendant resides.

2. As between courts of concurrent jurisdiction, the first
acquiring jurisdiction of the subject matter of an action is
permitted, with certain exceptions, to retain it to the end.
Applied to one District Court having jurisdiction of an in-
solvency proceeding against a corporation under chap. 79,
laws of 1905, in which a mortgage of the insolvent corpora-
tion is made a party defendant and answers, setting up his
mortgage, and another District Court in which, pending the
former proceeding, said mortgagee has obtained a decree

·of foreclosure, and sale of the insolvent's property there-under, the former District Court is entitled to retain the jurisdiction first acquired by it and to administer said estate to the exclusion of any such decree by the latter court.

3. A receiver can not ordinarily take into custody prop-erty found in possession of a stranger to the record, claim-ing title, but where such stranger intervenes in the receiv-·ership proceedings and submits his rights to the court for adjudication, he is not entitled to a writ of prohibition to restrain the court from determining those rights.

Prohibition.

LORIN C. COLLINS, solicitor for relator.

Proceeding in rem. Brown on Jurisdiction, chap. 8, secs. 58, 59, 59a, 61.

Action in rem must be brought in the county in which the res, or a portion thereof, is situated. Jemez Land Co. v. Antonio Jose Garcia, 15 N. M. 316; Turrill, et al. v. Walker, 4 Mich. 177; Jewett, 77, p. 567; 69 Kas. 830; 93 Mo. App. 1; 106 N. W. 1037; Etowah Milling Co. v. Cran-shaw, 42 S. E. 709; 116 Ga. 406; Lane v. Burdick, 17 Wis. 92; Atkins, et al. v. Fraker, 32 Wis. 510; Watts v. White, 13 Calif. 321; Williams, et al. v. Ewing & Fan-ning, 31 Ark. 234; Hammiel v. Fidelity Mut. Aid Assn., 85 Pac. 35; Webber v. Truax, 1 City Ct. 242; Bunch v. Bunch, 26 Ind. 401; 10 N. Y. 268; Elwyn v. Jackson, 14 La. 411.

Court not having jurisdiction of the res and the res not being under the control of the court, all orders made by it were null and void. Chitty Gen. Prac., vol. 2, 307; 5 How. Prac. 346; Park Bros. etc. v. Oil City B. W., 204 Pa. 453.

Writ of prohibition should have been granted. Have-meyer v. Sup. Ct., 84 Cal. 327; Payne v. Root, 121 Ill. 82; Wade on Notice, sec. 351; Andrews v. Parcheau, 61 Wis. 414; San Jose v. Fulton, 45 Cal. 319; Freeman on Judgments, (2nd ed.) sec. 196; Coombs v. Merrihew, 40 Mich. 725; Salling v. Mitchell, 2 Bail. 225; Queen v.

Judge, 20 L. R. Q. B. 167; White v. Gates, 42 Ohio St.. 111; Mays v. Wherry, 3 Tenn. Ch. 34; Insurance Co. v.. Stebbins, 8 Paige, 567; Baker v. Backus, 32 Ill. 80; Olm-- stead v. Rochester, 46 Hun. 552; Merced Mfg. Co. v. Free- mont, 7 Cal. 30; Kirby v. Sup. Ct., 68 Cal. 604; Quimbo. v. Appo, 20 N. Y. 540; Gist v. Colo., 2 Nott. & McC. 461;. 10 Am. Dec. 616; Ex parte Smith, 23 Ala. 94; Hutson v. Lowry, 2 Va. Cas. 42; French v. Noel, 22 Gratt. 454; Jones. v. Owen, 5 Dowe & L. 669; Marsden v. Wardle, 3 El. & B. 695; Thompson v. Ingham, 14 Q. B. 710; Ramsay v. Court, 2 Bay 180; Ingersall v. Buchanan, 1 W. Va. 184;. Arnold v. Bright, 41 Mich. 210; Jones v. Schall, 45 Mich.. 379.

GIBBANY & BLACK, for respondents.

Venue and jurisdiction. Lund v. Eagle Min. & Imp Co., 94 Pac. 949.

Authority of the court to appoint receiver. Secs. 72,. 73, 74 and 75, chap. 79, laws of 1905.

Rights of receivers. 128 N. Y. 550; In re Waterbury,. 4 L. Ed. 470; Porter v. Williams, 59 Am. Dec. 519; May- nard v. Bond, 67 Mo. 315; Texas Trunk Ry. Co. v. Lewis,. 81 Tex. 1; O'Mahoney v. Belmont, 62 N. Y. 133; Erie. Ry. Co. v. Ramsey, 45 N. Y. 637; Waters-Pierce Oil Co. v. State, 103 S. W. 836; 33 L. R. A. 171; Sturges v. Mor- an, 136 N. Y. 169; 20 L. R. A. 391; State Mo. v. Reyn- olds, 209 Mo. 161; Trust Co. v. Ry. Co., 177 U. S. 59; 34 Cyc. 202; Wisall v. Sampson, 14 L. Ed. 328.

Intervenor waives right to raise question of jurisdiction. 17 A. & E. Enc. of Law, 180; 11 Enc. Pl. & Pr., 495;. Bowdoin College v. Merritt, 59 Feb. Rep. 6; Jack v. Des Moines Ry. Co., 49 Ia. 627; Hoover v. York, 30 La. 752;. Arnold v. Weimer, 40 Neb. 216; Arnold v. Globe Invest. Co., 40 Neb. 225; Elliott v. Ivers, 6 Mo. 287; West v.. Creditors, 8 Rob. 123.

Question of jurisdiction must first be submitted to lower· court. Havemeyer v. Sup. Ct., 10 L. R. A. 648; 4 Suther--land's Pl. & Pr., sec. 7120; Ex parte McMeechen, 12 Ark. 70; Ex parte City of Little Rock, 26 Ark. 52; Havemeyer·

v. Sup. Ct., 84 Cal. 327; 18 Am. St. Rep. 192; 24 Pac. 121; 10 L. R. A. 627; Boughman v. Sup. Ct., 72 Cal. 572; 14 Pac. 207; Harris v. Brooker, 35 Pac. 599; State ex rel. v. Laughlin, 9 Mo. Ap. 486; 51 L. R. A. note 6, p. 107; South P. R. Co. v. Kim Co. Sup. Ct., 59 Col. 476; Lloyd v. Spurier, 103 Ia. 744; Hitchcock v. Hosmer, 97 Mich. 614; State ex rel. Atty. Gen. v. Gill, 137 Mo. 627; State ex rel. McGaffey v. Aloe, 152 Mo. 466; 47 L. R. A. 393; 54 S. W. 494; State ex rel. St. L. & K. R. Co. v. Hirzel, 137 Mo. 436; Smith v. Whitney, 116 U. S. 167; Harris v. Broker, 35 Pac. 599.

Jurisdiction is res adjucata. 24 A. & E. Enc. of L., 746; id. note 7; Lipscomb v. Postell, 77 A. D. 651; 21 A. & E. Enc. of L. (1st ed.), 139; Winston v. Westfeldt, 58 A. D. 278.

GIBBANY & BLACK, for respondents in reply.

Action in personam. State of Texas et al. v. Palmer, 22 L. R. A. (N. S.) 316; 158 Fed. 705; 22 Cyc. 1275, note 24; sec. 2950, C. L. 1897; chap. 79, laws of 1905; Alderson on Receivers, 221; Mercantile Co. v. Jenifer, 24 So. 448; Construction Co v. Long, 28 S. E. 860; Cass v. Sutherland, 74 N. W. 131; Conn. River Banking Co. v. Rockbridge Co., 73 Fed. 709.

Conveyance to Fulmer and relator were invalid. Sec 75, laws of 1905.

## OPINION OF THE COURT.

PARKER, J.—This is a proceeding for a writ of prohibition against John T. McClure as Judge of the District Court of Chaves County, and against said District Court. The facts giving rise to the controversy may be briefly stated as follows:

One R. E. Lund, being a judgment creditor of the Eagle Mining & Improvement Company, instituted a proceeding against said corporation as an insolvent under the provisions of chapter 79 of the laws of 1905, seeking an injunction against the further exercise of its corporate functions by it, and seeking the appointment of a receiver

of its assets. The corporation answered, setting up that all of its property had been conveyed by mortgage deed to one J. H. Fulmer, Jr. Thereupon Fulmer was ordered to be made a party defendant. Upon final hearing, the court made the following finding:

"Upon the pleadings and the proofs submitted, it is found by the court that the defendant corporation is insolvent and cannot, as now conditioned, conduct its business in the future with safety to the public or advantage to the stockholders. A decree may accordingly be drawn granting the relief prayed in the complaint and as provided by chapter 79 of the laws of A. D. 1905."

Thereupon a decree was entered appointing a receiver, but omitting to adjudge insolvency or to enjoin the further exercise of corporate functions by the corporation. This decree was brought to the Territorial Supreme Court by writ of error, and the writ was dismissed on the ground that, there being no injunction, the order appointing a receiver was interlocutory and not reviewable. Eagle Mining & Improvement Co. v. Lund, 15 N. M. 696.

Upon the remanding of the case to the District Court, the Eagle Mining & Improvement Company offered to file an amended answer, setting up certain occurrences since the writ of error was sued out, and hereinafter mentioned, which application was denied. Thereupon, on October 4th, 1911, the cause came on for final hearing, and the District Court, reciting its former findings, and that its former decree by inadvertence failed to award the injunction, entered a final decree adjudging insolvency, awarding injunction, and appointing the same receiver who had never qualified under his former appointment, and ordered said decree to take effect nunc pro tunc as of September 18th, 1908, the date of the original decree in the case. On March 15th, 1912, the relator intervened in the cause, and set up that it was the owner of the property sought to be administered by the court through the receivership, by reason of a certain foreclosure proceeding prosecuted to final decree and sale in the District Court of Lincoln county, and by conveyance to it from the said J. H. Fulmer, Jr., the purchaser at the foreclosure sale;

that no receiver of the property of the Eagle Mining & Improvement Company had qualified, and hence none was made party defendant: That R. E. Lund, the plaintiff in the receivership case, was made a party and answered; that the receiver appointed by the nunc pro tunc decree of October 4th, 1911, qualified and was assuming possession of the property and interfering with the possession of intervenor, relator here. It prayed for a decree that it owned the property, and for an order to the receiver to refrain from further inteference with the same. A demurrer was interposed to the petition of intervention but, so far as appears, the same remains undisposed of.

Subsequently, the receiver being still in charge, relator filed a motion in the receivership case, to be permitted to install certain machinery which should not become subject to the receivership. The court denied the motion, but made an order permitting the installation of the machinery provided it became a part of the estate, and as such, subject to the administration of the court through the receivership.

It appears that the domicile of the Eagle Mining & Improvement Company is at Parsons, in Lincoln County, in the Sixth Judicial District, and that all of its property was situated in said County of Lincoln, all of its business done there, all of its officers residing there, while the action for the injunction and receivership was begun and prosecuted in Chaves County in the Fifth Judicial District. Most of the property is real estate in the form of mining property.

A consideration of this case naturally involves three propositions, which may be stated as follows:

1. Is the subject matter of the action within the general scope of the jurisdiction of the Chaves County court?

2. If within the general jurisdiction of that court, what effect did the proceedings have upon the jurisdiction of courts of concurrent jurisdiction?

3. Was the manner of seizing possession of the property lawful and, if not, does the conduct of the relator waive the error?

A decision of the first proposition above mentioned re-

quires an examination into the nature of the action pro-
vided by chapter 79, laws of 1905. This act was adopted
bodily from the corporation act of New Jersey of 1896,
to be found in Parker's New Jersey Corporations, and in
which all of the New Jersey decisions are cited and di-
gested. In that state the courts have interpreted the statute
in numerous cases. In Gallagher v. Asphalt Co. of Amer-
ica, 65 N. J. Eq. 258, the U. S. Circuit Court of New
Jersey had taken jurisdiction of the asphalt company,.
and of all of its assets, and, through a receiver, was dis-
tributing the same to its creditors, and the objection was
made that the New Jersey court had no jurisdiction under
the statute to entertain the proceedings, the jurisdiction
having been assumed by the Federal Court. The New
Jersey Court, after pointing out that the Federal Court
was not assuming to strip the corporation of its power
to exercise its corporate functions, but was administer-
ing the corporate assets under its general equity powers,.
overruled the objection and proceeded to discuss the na-
ture of the statutory proceeding. The court said :

"Both sides, I think, conducted their argument some-
what under a misconception in regard to the nature of
this act—or at least upon the idea that the suit brought
under that act is an action for a receiver—an action neces-
sarily to reach assets and effect their distribution through
a receiver. I do not find that that is the main purpose
and object of our statute, and the history of our statute
strongly indicates that that view is erroneous. In my
opinion, our statute, originally passed, as I said, in 1892,
provides for a proceeding more in the nature of a quo-
warranto than of a creditor's bill. It provides for a pro-
ceeding which can be pursued to a finish, even though the
corporation has no assets whatever. Whether a receiver
shall be appointed under our statute or not, is wholly dis-
cretionary with the court, and the receivership is not
the essential object of the suit. The discretionary power
to appoint a receiver can only be exercised at the time the
injunction is ordered, or at some time thereafter * * *
As in the New York act, the direct object of the suit is
accomplished by an injunction placing the corporation

under disability—restraining it from the exercise of any
of its franchises. · As in the New York act, the receiver-
ship is purely discretionary, and when created follows the
decree for an injunction. A decree for an injunction
might go, although there were no assets. The order ap-
pointing the receiver could never be made unless the de-
cree passed at the same time, or had already passed, dis-
abling the corporation by the injunction. * * *

"Insolvency is one of the jurisdictional facts upon which
the decree goes. The decree itself is that the corporation
shall be enjoined from the exercise of its franchises. That
is the decree. It is often said that our statutory suit is
a proceeding *in rem*—that the status of the corporation
is permanently fixed by this decree. True enough. But
the status is not the status of a corporation as insolvent.
It is the status of a corporation with respect to the exercise
of its franchises. The status that is determined and fixed
by the decree is that of a corporation under disabilities,
enjoined from exercising its franchises. * * *

"Now, I think it will be perceived that our statutory
suit in a proceeding more in the nature of a quo war-
ranto than a creditors' bill for a receivership. In the case
of a creditors' bill, the direct object is the sequestration
of the assets by a receiver, and any injunction is ancillary
to that object. If there are no assets, and consequently no
receivership, it would be a strong case which would afford
any function for an injunction. On the other hand in
the case of a quo warranto suit, the direct object is to
procure a forfeiture of the corporate franchises—prac-
tical corporate death—and a receivership in those states
where there can be a receivership in a quo warranto case
is purely ancillary and dependent upon the necessities of
the particular case—dependent upon the existence of as-
sets to be received and distributed. If a corporation is
insolvent to the extent defined by our statute, it is not
material whether it has or has not assets, or if it has
assets what their value may be; the suit proceeds to final
decree in any case. * * *

"The result, therefore, is that the motion to dismiss
this bill is denied. The bill will be retained (in spite of

the fact that all of the assets of the corporation are in the possession of a receiver of the Federal Court, and at present there seems to be no reason why any receiver should be appointed by this court), for the accomplishment of the statutory object of this suit, which has no essential relation to the sequestration or distribution of assets." See also Pierce v. Old Dominion Copper Mining & Smelting Co., 67 N. J. Eq. 399, to the same effect, referred to and approved in the Eagle Mining & Improvement Co. v. Lund, 15 N. M. 696.

In the New Jersey cases it is said that the proceeding is a proceeding *in rem*, but it is clearly pointed out in these cases that the *res* is the status of the corporation, not its assets.

The sequestration and administration of the assets of the corporation is merely incidental to the main object of the proceeding, and is in the nature of an execution. If this is the correct interpretation of the statute, of which we have no doubt, it follows that the action is in its nature a personal and transitory one and falls within the first subdivision of sec. 2950, C. L. 1897, which provides that transitory actions may be brought in the county where either the plaintiff or the defendant resides, and does not fall within the 4th subdivision of the section which provides that when lands are the object of a suit such suit shall be brought in the county where the lands are situated.

We have hesitated to adopt this conclusion by reason of a practical question involved. Under this holding a corporation having a domicile in one corner of the state, may be sued by a creditor residing in the extreme opposite corner of the state and thus be subject to great costs and inconvenience. But no matter what the consequences may be, we can not see our way clear to adopt any other doctrine. The remedy, if any is needed, lies with the legislative and not with the judicial department.

In this connection, we have not failed to notice the provisions of sec. 83 of the corporation act hereinbefore mentioned. The section is as follows:

"Any creditor or claimant who shall lay his claim be-

Mining Co. v. McClure, 17 N. M. 694.

fore such referee, may, at the same time, demand that a jury shall decide thereon, and in like manner the receiver may demand that the same shall be referred to a jury; and in either case such demand shall be entered on the minutes of the referee, and thereupon an issue shall be made up between the parties, under the direction of the District Court, and a jury impaneled, as in other cases, to try the same in the District Court of the county in which the corporation carried on its business or had its principal office, as in other civil cases, and the claim shall be docketed as other civil cases in said court; the verdict of the jury shall be subject to the control of the court as in suits originally instituted therein, and when rendered, if not set aside by the court, shall be certified by the clerk to the receiver and referee, and the creditor shall be considered in all respects as having proved his debt or claim for the amount so ascertained to be due, and in all cases in which no trial by jury shall be demanded the court shall have jurisdiction to pass upon the claims presented and to determine the rights of the claimants, and to make such order or decree touching the same as shall be equitable and just."

This section was adopted from sec. 77 of the New Jersey Corporation Act, which is as follows:

"Any creditor or claimant who shall lay his claim before such receiver may, at the same time, demand that a jury shall decide thereon, and in like manner the receiver may demand that the same shall be referred to a jury; and in either case such demand shall be entered on the minutes of the receiver, and thereupon an issue shall be made up between the parties under the direction of one of the justices of the Supreme Court, and a jury empaneled, as in other cases, to try the same in the circuit court of the county in which the corporation carried on its business or had its principal office; the verdict of the jury shall be subject to the control of the Supreme Court, as in suits originally instituted therein, and when tendered, if not set aside by the court, shall be certified by the clerk of the Supreme Court, to the receiver; the creditor shall be considered, in all respects, as having proved

his debt or claim for the amount so ascertained to be due, and in all cases in which no trial by jury shall be demanded the court of chancery shall have jurisdiction to pass upon the claims presented and to determine the rights of the claimants, and to make such order or decree touching the same as shall be equitable and just."

It appears that the legislature attempted to adapt the New Jersey law to our situation, but that the adaptation is perhaps faulty in that it is not clear and specific as to just what is meant. In New Jersey the Chancery Court has, we understand, territorial jurisdiction throughout the state, and it is clearly pointed out in their act that the jurisdiction of the main insolvency proceeding is vested in a court other than the one in which issues of fact are to be tried by a jury. In our jurisdiction, however, the several district courts are courts of both common law and chancery jurisdiction, and possess all of the general original jurisdiction in their respective districts, with some minor exceptions, and to the exclusion of other district courts. At first glance it would seem anomalous for an issue to be framed under the direction of one district court, to be tried to a jury in another district court of equal dignity and general character of jurisdiction. In other words, if a district court has jurisdiction of a given subject matter, it would seem that its jurisdiction should be adequate to dispose of every issue that might arise in the course of the litigation. But the legislature. we assume, could provide, if it so desired, for just such a result as has been outlined, and the question is whether it is so provided by the act in question.

Some little light is thrown upon the question by the adaptation of the law from the New Jersey act. In New Jersey it clearly appears that the issues are to be tried by a jury in a court other than that in which the main insolvency proceeding is pending, and the legislature followed the New Jersey act as closely in terms as possible under our circumstances. While not conclusive, this is persuasive as to the legislative intent that the venue of the main cause may be in one county, and the venue of an issue of fact before a jury in another county. Again,

our district courts possess both common law and chancery jurisdiction. While our district courts, so possessed of both jurisdictions, are presided over by the same judge, still the functions of the court in the two classes of cases are as distinct as those of the English courts of chancery, and the English common law courts. And when the district court entertains an insolvency proceeding of this kind, it sits as a court of chancery, and when it tries an issue to a jury, it sits as a court of law, with entirely different powers and functions.

But a more careful inspection of our act itself, leads to the conclusion that the legislature contemplated that the venue of the main action and that of the issue at law, might be in different counties or even in different districts. It is to be observed that the venue of the issue at law alone is fixed by the act, wherein it provides:

"And thereupon an issue shall be made up between the parties, under the direction of the district court, and a jury empaneled, as in other cases, to try the same in the district court of the county in which the corporation carried on its business or had its principal office, as in other civil cases, and the claim shall be docketed as other civil cases in said court."

And it is seen that this venue may be either in the county where the corporation carried on its business, or in the county where it had its principal office. It is a matter of common observation that corporations may have, and do have, their principal office in a given county, and may transact all of their business in another county or district. A corporation having its principal office in Santa Fe County, may do all of its business in Dona Ana County, for instance. The word "business" in this connection, evidently means the acts of the corporation whereby they come in contact with the public, and is the equivalent of occupation. It does not refer to the internal management of the corporation, such as the holding of director's and stockholders' meetings and the like, else the business of the corporation would always be done at its principal office. Once admitted that the venue of the main insolvency proceeding and that of the trial of an issue to a

jury may be in different counties, or even in different dis-tricts of the state, it seems clear that sec. 83 was not intended to, and does not control, the venue of the main action.

As a practical question we assume that the issue may be framed under the direction of the district court in which the main insolvency proceeding is pending, and that the same may be filed by either of the parties in the proper district court, as provided by the act, and as an ordinary action at law in a civil case.

A discussion of the second proposition necessitates a determination of when jurisdiction of a subject matter attaches, and what effect the same has upon the concurrent jurisdiction of other courts. It is to be remembered that Fulmer, the mortgagee, was a party to the proceedings in the Chaves County court, served with process, and answering, setting up his mortgage. It is likewise to be observed that under the act, chap. 79, laws of 1905, ample provision is made for the determination of every question of law or fact involving the validity, priority or other characteristic of any claim of any creditor of the insolvent corporation, and for the payment of the same out of the estate of the insolvent. It is further to be observed that the parties before the Lincoln county court, where the mortgage of Fulmer was foreclosed, were the same as the parties before the Chaves county court. It is true that in the Lincoln county court the form of the procedure was somewhat different, in that it was strictly a foreclosure proceeding, but Lund, the plaintiff in the Chaves county proceeding, was made a defendant and the question as to the priority of the claims of Fulmer and Lund respectively, was litigated. In the Lincoln county proceeding the fact of the pendency of the Chaves county proceeding was called to the attention of the court by the answer of Lund. While these proceedings, as before said, were slightly different in form, the essential elements of the two were the same in each instance. In the Chaves county proceeding the mortgage could not be foreclosed in form, but the question of its validity, its relative priority, and the subjection of the insolvent estate to its payment, were all

within the scope of that proceeding.  We therefore con-
sider the two proceedings as identical in substance and
effect.

     .It is a fundamental rule of law, subject to some excep-
tions to be hereafter noticed, that as between courts
**2**    of concurrent jurisdiction, the first acquiring juris-
diction of a subject matter of an action is permitted
to retain it to the end.  1 Freeman on Judgments (4th
ed.), sec. 118-a; Young v. Hamilton, Ann Cases, 1912
A, 144; State v. Reynolds, 14 A. & E. Ann Cases, 198;
Coleman v. State, 1 A & E. Ann Cases, 406.

This doctrine has often been applied under various cir-
cumstances.  Thus, in Farmers' Loan, etc. Co. v. Lake
Street Railroad Co., 177 U. S. 51, a contest arose between
a trustee under a trust deed to secure the payment of
certain bonds of a railroad and a set of minority bond hold-
ers, who were seeking to oust the trustee from its office,
and to prevent its action in the Federal Court to fore-
close the mortgage.  The proceeding was first instituted
in the Federal Court.  The Supreme Court of the United
States, in passing upon the question, says:

"The possession of the *res* vests the court which has
first acquired jurisdiction with the power to hear and
determine all controversies relating thereto, and for the
time being disabled other courts of co-ordinate jurisdiction
from exercising a like power.  This rule is essential to
the orderly administration of justice, and to prevent
unseemly conflicts between courts whose jurisdiction em-
braces the same subjects and persons.

"Nor is this rule restricted in its application to cases
where property has been actually seized under judicial
process before a second suit is instituted in another court,
but it often applies as well where suits are brought to
enforce liens against specific property, marshal assets,
administer trusts or liquidate insolvent estates, and in
suits of a similar nature where, in the progress of the
litigation, the court may be compelled to assume pos-
session and control of the property to be affected."

In McDowell v. M'Cormick, 121 Fed. 61, an action by
a creditor was brought against an insolvent corporation

in a court of general jurisdiction in the State of Indiana, which court appointed a receiver. Subsequently on the application of another creditor, another court of Indiana, of co-ordinate general jurisdiction also appointed a receiver, who thereupon took possession of the insolvent corporation's property. It was held that the first named court acquired complete and exclusive jurisdiction of the subject matter irrespective of any actual seizure of the property, and the record of such proceedings was admissible in evidence to prove title to the property as against title asserted by the second appointee. It is said by the court:

"When the complaint on behalf of another creditor was filed in the La Porte Superior Court, summons was served and an appearance entered, that court was without present jurisdiction of the subject-matter, 'for the property could not be subject to two jurisdictions at the same time.' Covell v. Heyman, 111 U. S. 176, 182. Possession of the property obtained by its receiver was, of course, nugatory as were any orders for the sale thereof."

In Louisville Trust Co. v. Knott, 130 Fed. 820, the minority stockholders of the corporation filed a bill in the state court for an inspection of its books, the ascertainment of its debts and liabilities, together with a sale and distribution of its assets, and other equitable relief. The majority stockholders appeared in that case, but pending the same filed a creditor's bill for the appointment of a receiver in the Federal Court, who when appointed took possession of the assets, which the Federal Court refused to surrender to a receiver subsequently appointed by the state court. It was held that the state court had first acquired jurisdiction of the subsequent matter of the administration of such corporation's assets, though it had not first taken physical control thereof, and hence was entitled to their surrender by the receiver of the Federal Court. The court says:

"To avoid such conflict, most liable to arise between the Federal and State Courts, it has come to be settled, as we think, that, wherever a State or Federal Court has lawfully taken jurisdiction of a case for the purpose

of subjecting assets within its territory to the charge or disposition which the law applicable to the case requires, such assets are thereby brought in *custodia legis* subject to the power and control of the court, and that no other court of co-ordinate jurisdiction can, in a suit commenced while the assets are in that situation, lawfully deprive the court, which has already acquired the right of control, of the possession of them. This because the possession of the *res* is indispensable to the exercise of its jurisdiction by the court to the end that it may be impressed by its decree. It does not seem to us important that a receiver had not actually been appointed. An appointment of a receiver would rest upon considerations of convenience, and might be made at any time during the progress of the case, if occasion should arise. The conversion of the assets might be made without the employment of a receiver at all. Besides the appointment goes upon the ground that the court has acquired control of the assets. He is a mere agent of the court. The possession is that of the court, and not his own. It is quite true that in many cases this rule has been stated in terms no broader than to include an actual possession by the court consequent upon seizure. But it is seen that generally in such cases the exigency did not make it necessary to go beyond that limit. When the question we are now considering has been actually presented, the decisions have been quite uniformly in accord with the rule which we have indicated as the correct one."

In Sullivan v. Algrem, 160 Fed. 366, it is said:

"The legal custody of specific property by one court of competent jurisdiction withdraws it, so far as necessary to accomplish the purpose of that custody, until that purpose is completely accomplished, from the jurisdiction of every other court. The court which first acquired jurisdiction of specific property by the lawful seizure thereof, or by the due commencement of a suit in that court, from which it appears that it is, or will become, necessary to complete determination of the controversy involved, or to the enforcement of the judgment or decree therein, to seize, charge with a lien, sell, or exercise other like do-

minion over it, thereby withdrawing that property from the jurisdiction of every other court, and entitles the former to retain control of it requisite to effectuate its judgment or decree in the suit free from the interference of every other tribunal."

In Lang v. Choctaw, etc. R. Co., 160 Fed. 355, Judge Sanborn states the doctrine in the same form.

In Waters-Pierce Oil Co. v. State, 103 S. W. 836, there was a conflict of jurisdiction between the state court and the Federal Court as to the custody of the estate of the Waters-Pierce Oil Co., whose charter had been lately forfeited by the State of Texas. In that case it is said:

"There is a rule, not only one of comity, but by force of judicial decisions of the highest court in the land has become one of jurisdiction, a rule so universally recognized that no court will question it, and it may be stated to be: That, when the power of a court of jurisdiction is first invoked to seize and administer property, its jurisdiction is exclusive, and no other court of concurrent jurisdiction can interfere to materially disturb or hinder the former in the exercise of its authority and jurisdiction over the *res*.

The court further says:

"When did the property become in *custodia legis,* and when did the jurisdiction of the trial court attach? For the purpose of this controversy, we need not discuss the conflict of decisions which on the one hand held that the jurisdiction is complete from the filing of the bill, and upon the other that it does not attach until the service of subpoena, for here in this instance it is clear that the defendant corporation was in court properly served and appearing in the receivership proceedings. When service is had, or there is the equivalent by appearance, if there could be any doubt as to which of the two lines of decisions should prevail, the weight of reason and authority is clear to the effect that the jurisdiction of the court will, under the doctrine of relation, after the order made, commence from the time of the filing of the bill for appointment, although no possession has been taken by the receiver of the property sought to be administered by the court. This

principle is well settled." See Craig v. Hoge, 28 S. E. 217, for specific application of this principle to other cases of the general character of the case at bar. See also numerous cases collected in the note to Young v. Hamilton, Ann. Cases, 1912 A. 150.

It seems clear from the foregoing authorities, and upon principle, that the Chaves county court, upon the filing of the bill and the service of process in the proceeding which contemplated the adjudication of the question of insolvency, the awarding of an injunction against the corporation, if found insolvent, stripping it of its corporate powers, adjudicating the claims of all of its creditors, subjecting its estate to the payment of the same, absorbed all of the jurisdiction concerning the corporation and its property, to the exclusion of all courts of co-ordinate jurisdiction.

As before stated, an exception to the general rule exists as to actions in *personam*, as the exception is usually stated. The early and leading case pointing out this exception is Buck v. Colbath, 3 Wall. (U. S.) 334. In that case a United States Marshal was sued for trespass, and he defended himself on the ground that his acts were performed under a writ from a proper Federal Court, and Mr. Justice Miller, speaking for the court, says:

"It is scarcely necessary to observe that the rule thus announced" (the general rule heretofore mentioned) "is one which has often been held by this and other courts, and which is essential to the correct administration of justice in all countries where there is more than one court having jurisdiction of the same matters. * * * But it is not true that a court having obtained jurisdiction of a suit, and of parties before it thereby excludes all other courts from the right to adjudicate upon other matters having a very close connection with those before the first court, and, in some instances requiring the decision of the same question exactly.

"In examining into the exclusive character o fthe jurisdiction of such cases, we must have regard to the nature of the remedies, the character of the relief sought, and the identity of the parties in the different suits. For

example, a party having notes secured by a mortgage on real estate may, unless restrained by statute, sue in a court of chancery to foreclose his mortgage, and in a court of law to recover judgment on his note, and in another court of law in an action of ejectment to get possession of the land. Here in all the suits the only question at issue may be the existence of the debt mentioned in the notes and mortgage; but as the relief sought is different, and the mode of proceeding is different, the jurisdiction of neither court is affected by the proceeding in the other. And this is true, notwithstanding the common object of all the suits may be the collection of the debt. The true effect of the rule in these cases is, that the court of chancery cannot render a judgment for the debt, nor judgment of ejectment, but can only proceed in its own mode, to foreclose the equity of redemption by sale or otherwise. The first court of law cannot foreclose or give a judgment of ejectment, but can render a judgment for the payment of the debt; and the third court can give the relief by ejectment, but neither of the others. And the judgment by each court in the matter properly before it is binding and conclusive on all other courts. This is the illustration of the rule where the parties are the same in all three of the courts."

In commenting upon the illustration of the principle given in this case, Mr. Justice Field, in the Circuit Court in the case of Sharon v. Terry, 36 Fed. 337, 359, uses the following language:

"The exceptions to the doctrine that priority of jurisdiction controls priority of decision, to which we have referred, and to which our attention has been called by counsel of the defendants, will be found on examination to range themselves under two classes: *First,* where the same plaintiff has asked in the different suits a determination of the same matter; as, for instance, where different obligations are issued upon the same transaction, which is attacked in each suit as fraudulent and illegal, and therefore vitiating the several obligations; or where the jurisdiction of a court of equity, as well as a court of law, is invoked by him with reference to the matter. Of course

a decision first rendered in either suit may be pleaded in the others. The plaintiff must abide the adjudication which he has sought. And, *second,* where the cases are upon contracts or obligations, which from their nature are merged in the judgment rendered, the subject upon which the first suit is founded having thus ceased to exist."

But it is apparent that the case at bar does not fall within the exceptions. In this case the same parties, the same questions, the same relief could be obtained in both proceedings, with some additional relief to the plaintiff. But so far as the mortgagee, Fulmer, is concerned, the two cases are exactly alike in all particulars, except the technical form of procedure and of subjecting the property to the payment of this debt.

In connection with this exception to the general rule, and as illustrative of the same, reference is made to Gallagher v. Asphalt Co., 65 N. J. Eq. 258; Squire v. Princeton Lighting Co., 72 N. J. Eq. 883, and Gallagher v. True American Pub. Co., 74 Atl. 741. In each of these cases the action was in *personam* upon a legal demand against an insolvent corporation, and judgments were obtained after the filing of a proceeding against the defendant corporation as an insolvent, but before an adjudication of insolvency and the award of an injunction. It was held that until an adjudication of insolvency and the awarding of an injunction that creditors of the corporation might pursue their legal remedies in *personam, and* thereby acquire a preferential claim against the insolvent estate. But these cases in no way affect the general doctrine above stated.

It seems clear, therefore, that upon the filing of the bill and the service of process in the Chaves county court, that court absorbed the whole jurisdiction over the defendant corporation, its creditors and its estate, and that the Lincoln county court had no jurisdiction then to entertain the foreclosure proceeding.

A serious question is presented by reason of the manner in which the Chaves county court took possession of the estate of the insolvent corporation. The receiver who was finally appointed and qualified, found in pos-

session of the property a stranger to the record, claiming to own the. property and protesting against any interference with its possession. This cannot ordinarily be done. See Havemeyer v. Superior Court, 84 Cal. 327, 18 A. S. R. 192. Rights to property cannot ordinarily be tried in a summary manner by the appointment of a receiver who arbitrarily takes possession of the same. The more orderly and proper method, in cases where property is found in the possession of a stranger to the record, claiming ownership and right to possession of the same, and which is sought to be taken into possession as the property of another person, is to authorize the receiver to bring a suit to try the title. But whether in this case the facts justified the taking of the possession of the property under the circumstances shown by the record or not, the relator being privy in estate with the mortgagee, Fulmer, it is not necessary for us to decide by reason of the subsequent conduct of the relator.

It appears, as before seen, that the relator intervened in the Chaves County proceeding, and there set up its title to the property and asked to have the same relieved from the custody of the receiver. Upon that petition issues can be made up, and the question of the jurisdiction of the Lincoln county court, under whose decree the relator holds, can be fully adjudicated. The relator has submitted its case to the Chaves county court, and must be held to await its judgment which, it is to be presumed, will be correct.

For the reasons stated the alternative writ of prohibition will be discharged, and it is so ordered.