## JONES et al. v. PAGE et al.

[No. 2443.	Dec. 28, 1920.]

1. In a proceeding under section 956 et seq., Code 1915, the main jurisdictional question is the insolvency of the corporation	P. 444

2, 3. In such proceeding, the judgment appointing the receiver and issuing the statutory injunction is a final judgment, upon the rendition of which the court loses further control thereof, except for the period of time specified in chapter 15, laws 1917.	P. 444

4. In such a proceeding, the decree appointing the receiver and adjudging the corporation to be insolvent binds the corporation, stockholders, and creditors.	P. 444

5. A judicial sale will not be set aside for inadequacy of price unless it be so gross as to shock the conscience, or unless there be additional circumstances which would make it inequitable to allow the sale to stand.	P. 445

6. As a condition precedent to the right to a reconveyance of the property to the corporation in receivership proceeding the debts must be paid or their actual payment provided for.	P. 446

7. In judicial sales by receivers the court may confirm or refuse to confirm the sale in the exercise of its judicial discretion, and, unless there is manifest or gross abuse of that discretion shown, the action of the court thereon will not be disturbed on appeal.	P. 447

Error to District Court, McKinley County; Raynolds, Judge.

Proceedings by the Gallup State Bank and others against the Direct Line Coal Company, Arthur A. Jones, and others for the appointment of a receiver and for an injunction. Arthur A. Jones and others objected to the confirmation of a sale made by Gregory Page as receiver. The sale was confirmed, and objectors bring error. Affirmed.

E. A. MARTIN, McFIE, EDWARDS & McFIE, and A. T. HANNETT, all of Gallup, for plaintiffs in error.

SIMMS & BOTTS, of Albuquerque, and H. C. DENNY, of Gallup, for defendants in error.

OPINION OF THE COURT.

PARKER, C. J.   This case is before us upon a motion to dismiss the writ of error and also upon the merits.

The action was begun in the district court for McKinley county by the Gallup State Bank, the Gallup Mercantile Company, and the Gallup Cold Storage Company against the Direct Line Coal Company and stockholders R. H. Conklin, John L. Case, Arthur A. Jones, and Richard A. Jones. The complaint, filed on February 28, 1918, alleged facts tending to show that the Direct Line Coal Company was insolvent and prayed for the appointment of a receiver and the issuance of an injunction. The plaintiffs were alleged creditors of the coal company, and the proceeding was brought under the provisions of section 956, et seq., Code 1915. The court, upon the showing made by the complaint, appointed Gregory Page as receiver and issued the injunction prayed for in the complaint. In the same order the defendants were ordered to show cause on February 27, 1918, why the order appointing the receiver should not be made final and the injunction permanent. Conklin and Case, in response to the order to show cause, admitted that the order appointing the receiver was necessary and joined in the prayer of the complaint that the appointment of the receiver be made final and the injunction permanent. The other defendants, while they denied certain paragraphs of the complaint concerning the alleged insolvency of the coal company, and matters incidental thereto, did, however, join in the prayer of the complaint praying that the order appointing the receiver be made final. The court on February 28, 1918, entered an order in conformity with the prayer of the complaint, joined in by the defendants. The receiver, Gregory Page, thereafter from time to time made reports to the court of his management of the property, until April 21, 1919, when he applied to the court for permission to sell the property, which permission was on that day granted by the court. The property was again ordered by the court on a later date to be sold

July 15, 1919; the reason for the delay being the request of certain stockholders of the coal company for time in which to attempt to arrange to take over the affairs of the company. On July 14, 1919, C. N. Root and Elizabeth Carmen peitioned the court to set aside the order of sale and to restore the property to the coal company on the ground that the corporation was not insolvent at the time of filing the petition, or when the receiver was first appointed. Root and Carmen alleged they were stockholders of the coal company, and that they had no notice of the receivership proceedings until the property had been advertised for sale. On July 15, 1919, Root, Carmen, Richard A. Jones, and Arthur A. Jones filed objections to the confirmation of the sale made by the receiver, setting forth the same grounds therefor as were contained in the petition of Root and Carmen theretofore filed. On July 18, 1919, the receiver filed an application for the confirmation of the sale made by him July 15, 1919. On August 16, 1919, a hearing was held upon the application of the receiver to have the sale confirmed and upon the objections of Root, Carmen, Arthur A. Jones, and Richard A. Jones, and the court thereupon rendered its decision confirming the sale and denying the objections thereto. The order confirming the sale was formally signed on August 30, 1919, and entered of record September 25, 1919. Upon the conclusion of the hearing and after the rendition of the decision of the court, Root, Carmen, Arthur A. Jones, and Richard A. Jones prayed for and were granted an appeal.

The assignments of errors attack the appointment of the receiver, and the refusal of the court to restore the property to the coal company upon the objection of plaintiffs in error to the confirmation of the sale.

The case is before us on the merits, and the receiver has also filed a motion to dismiss the writ in so far as the judgment appointing the receiver is concerned. The motion to dismiss really constitutes an attack on the assignments of errors, which call in question the action

of the trial court in appointing the receiver, and will be treated as such rather than as a motion to dismiss the writ of error.

Two sets of briefs have been filed for plaintiffs in error. We shall consider generally the assignments in about the order in which they are argued in those briefs.

It is strenuously contended by plaintiffs in error that the court erred in appointing the receiver. It is asserted that the coal company was not insolvent; that the mere inability to meet its obligations did not constitute insolvency; that the insolvency must have been such as to prevent the corporation from resuming its business; that the court was without jurisdiction to appoint the receiver, the corporation not being insolvent; that jurisdiction cannot be conferred by consent; that the main indebtedness owing to the bank was not due; that the interest thereon had been paid almost to date; and that, while the order appointing the receiver may be a final judgment, Root had no notice of the proceedings, and Richard A. Jones and Arthur A. Jones were assured the receivership was necessary.

[1] This proceeding was instituted under section 956 et seq., Code 1915. Section 956 provides in part that, "whenever any corporation shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same," it may be placed in the hands of a receiver by the court. In such a proceeding the main jurisidictional question is that of the insolvency of the corporation. Sacramento Valley Irr. Co. v. Lee, 15 N. M. 567, 113 Pac. 834; State ex rel. Parsons Mining Co. v. McClure, 17 N. M. 694, 701, 133 Pac. 1063, 47 L. R. A. (N. S.) 744, Ann. Cas. 1915B, 1110.

[2, 3] The judgment of the court appointing the receiver and issuing the statutory injunction and finding the corporation to be insolvent is a final judgment. Sacramento Valley Irr. Co. v. Lee, supra; Eagle Mining & Imp. Co. v. Lund, 15 N. M. 696, 113 Pac. 840; De-

partment Store Co. v. Gauss-Langenberg Co., 17 N. M. 112, 125 Pac. 614. In the case at bar such a decree was entered on February 28, 1918. Consent to the entry of such a decree was given by Richard A. Jones and Arthur A. Jones, and the first time any objection was made thereto by either Root or Carmen or Richard A. Jones or Arthur A. Jones was on June 14, 1919, more than a year after the entry and rendition of such final decree.

Upon the rendition of that final decree the same passed from the control of the court, except for the 30-day period of additional control specified by chapter 15, Laws of 1917. Fullen v. Fullen, 21 N. M. 212, 153 Pac. 294; Norment v. First National Bank, 23 N. M. 198, 202, 167 Pac. 731. In the latter case this court refused to consider questions first raised by Norment by motion for a new trial, filed after the court had lost jurisdiction to grant the relief prayed, even though Norment's contention might have been correct, on the theory that the trial court could not err in refusing him relief when the law prevented the granting of such relief when applied for after the court had lost control of the judgment. That principle applies in the case at bar.

[4] The principle is not inapplicable because Root and Carmen had no notice of the insolvency proceedings during any of the time the court had control over that judgment. Root and Carmen were stockholders only. The coal company was the only proper party defendant in the receivership proceedings, and the decree adjudging the corporation insolvent and appointing the receiver bound the stockholders as well as the corporation and the creditors. Mirabal v. Albuquerque Wool Scouring Mills, 23 N. M. 534, 542, 170 Pac. 50. In the guise of objections to the confirmation of the sale the plaintiffs in error seek to raise questions which if sustained would require the setting aside of the judgment of February 28, 1918.

While it may be true that the coal company may have become solvent during the receivership proceedings, the jurisdiction of the court, it is plain, would not be ousted

by that fact. The statute prescribes how the receivership proceedings are to be terminated. Sections 960 and 961, Code 1915.

This leaves for consideration only the objections that the sale should not have been confirmed for reasons other than the solvency or insolvency of the corporation at the time of the appointment of the receiver.

[5] The objections on this ground are rather numerous. Some of such objections need not be noticed because not germane to the proposition under discussion. The principal objection to the confirmation of the sale seems to be that the price for which the property was sold was so inadequate that it was sufficient to shock the conscience of the court. It is admitted by counsel for plaintiffs in error that mere inadequacy of price for which property is sold at a receiver's sale is not sufficient to set aside the sale, but it is contended that the price was not only inadequate, but that inequitable circumstances intervened. The property sold for seventy odd thousand dollars. The receiver had great difficulty in making a sale even for that price. The property was of such a nature that its value was very speculative at best. It consisted of coal mining property and certain personal property used in conjunction therewith. Reports of the receiver and of certain certified public accountants disclosed the net assets, at different periods of the receivership, to be of book value of from $80,000 to $150,000. The trial court was cognizant of the facts, for it found that—

"While the apparent value of said property, as based upon the books of said insolvent corporation and upon geological inferences as to the amount of workable coal in the lands belonging to said insolvent corporation, is largely in excess of the amount of the purchase price received at the sale, the actual value thereof, as determined by the receiver's efforts to secure bidders and offers therefor, and by the actual advertisements of sale at public vendue on two different occasions, is not in excess of the amount of said purchase price."

In Horse Springs Cattle Co. v. Schofield, 9 N. M. 136, 49 Pac. 954, the court said that in judicial sales, as dis-

tinguished from sales made under execution, the court, in a measure, is the vendor, and that it has the greater power over it; the grounds of interference therewith being not so strict.

In Las Vegas Railway & P. Co. v. Trust Co. of St. Louis, 15 N. M. 634, 649, 110 Pac. 856, the rule with respect to setting aside judicial sales was stated to be that they will not be set aside for inadequacy of price unless it be so gross as to shock the conscience, or unless there be additional circumstances which would make it inequitable to allow the sale to stand.

We have a case where the book net assets amount to from $80,000 to $150,000, and the property of the corporation is sold for seventy thousand odd dollars. If the book net assets constituted the actual cash value of the property we would not hesitate in ordering a new sale, but the book assets are not the key to the situation, because the trial court found, and rightly we think, that the actual value of the property was the amount for which it was sold by the receiver. The receiver, in good faith, endeavored to obtain for the property all that he could procure. He sold at public vendue to the highest and best bidder, and, while that is not conclusive that the price was adequate, the fact is persuasive in view of the other facts tending to show fairness throughout the transaction. We fail to appreciate the argument that fraud was shown, or that any fraud existed, because George A. Kaseman, a stockholder, purchased $60,-000, of the obligations of the company and was anxious to obtain the title to the property because of his ownership of adjacent property. His motive was entirely immaterial. Department Store Co. v. Gauss-Langenberg Hat Co., 17 N. M. 121, 125 Pac. 614. No badge of fraud is shown by the circumstances, nor do we find anything in the evidence which indicates that the sale was not fairly conducted and the property sold for the best price obtainable.

[6] The plaintiffs in error contend that the court

should have restored the property to the corporation and permitted it to refinance itself and carry on its business without stripping it of its tangible assets. There was a mortgage upon the corporate property, and plaintiffs in error say that there was sufficient money in the hands of the receiver to permit of the payment of that mortgage. The theory advanced then is that with the mortgage discharged the corporation would have been able, had the property been turned back to it, to remortgage the property and thus obtain sufficient capital to enable it to discharge all of its debts and resume its business.

After a corporation is placed in the hands of a receiver, the statute anticipates its subsequent resumption of business, or its dissolution. Sections 960 and 961 are the only sections dealing with this subject. Section 960 provides that, when it appears that the debts of the corporation have been paid "or provided for" and sufficient capital remains or can be obtained by contribution to enable the corporation to resume its business, the court may "in its discretion," "a proper case being shown" reconvey the property "to the corporation"; but where such reconveyance is not directed the court may dissolve the corporation. Section 961 provides that whenever a "majority in interest of the stockholders" have agreed upon a plan for reorganization, upon reconveyance of the corporate property, the corporation may mortgage its property to obtain such amount as may be necessary for reorganization purposes. It will be noted that as a condition precedent to the reconveyance of the property to the corporation, the debts of the corporation must have been paid or "provided for." In the late New Jersey case of Bull v. International Power Co., 87 N. J. Eq. 1, 99 Atl. 111, a section identical with that under consideration was construed by the court to mean that the propty should not be reconveyed unless the debts have been paid or "actual payment provided for." The trial court found that the "objectors, at no time have shown themselves ready, able, and willing to pay the debts of said insolvent corporation so that the property thereof might be taken out of the hands of the receiver and turned

back to the corporation.'' We find no evidence in the record sufficient to overthrow this finding. The sale was made necessary in order to liquidate the indebtedness of the corporation and the court properly ordered it.

[7] The record discloses that George A. Kaseman purchased the claims of Case and Conklin against the corporation after it was in the receiver's hands, and as part of that purchase and agreement received from Case and Conklin 60,000 shares of the corporation stock. These shares were sold to Case and Conklin originally at 50 per cent. of their par value, evidently because the company needed the money at once and could not make a sale for a better price. Case and Conklin were not original subscribers to the capital stock. The company was organized in either 1913 or 1914, and Case and Conklin purchased the shares in 1915. Plaintiffs in error contend that the court should have compelled Kaseman to pay into court $30,000, which constitutes 50 per cent. of the par value of the shares purchased from Case and Conklin and the amount Case and Conklin left remaining unpaid on the shares purchased by them. The theory of this proposition, viewed from the standpoint of plaintiffs in error, as we understand it, is that, had the court so ordered, the sale would have been unnecessary, because the $30,000 thus obtained, plus the money in the treasury, would have been sufficient to satisfy all indebtedness against the insolvent corporation, and the property might well then have been restored to the corporation.

It will be noted that this proposition was not urged by creditors in a creditors' bill, nor by the receiver, nor in any other of the ways usual if not essential, but it is made by stockholders of the insolvent corporation as a reason why the court erred in confirming the sale.

Nor do counsel brief the proposition by showing that Case and Conklin themselves, had they not made transfer of the said shares, would have been liable to the corporation, receiver, or creditors of the insolvent corporation.

Nor is any mention made by counsel that, Case and Conklin being liable, Kaseman legally stepped into their shoes upon the transfer of their certificates to him, and became liable on the doctrine of notice, actual or constructive.

The receiver applied to the court for permission to sell the property, and the necessity of sale was then determined. The proper time to raise the objection now under discussion was then; not after permission had been obtained, notice of sale given, and sale thereunder had. But a more important reason exists for our conclusion on this proposition. The sale was in legal effect by the court itself through its officer, the receiver. In such cases the court may confirm or refuse to confirm the sale in the exercise of judicial discretion, 23 R. C. L. p. 99 "Receivers." Unless there is a manifest or gross abuse of that discretion the action of the trial court will not be disturbed. Chase v. Fisher, 239 Pa. 545, 86 Atla. 1094. This follows the general rule with respect to the review of discretionary action of trial courts, so often adverted to by us.

Because of the application of the foregoing doctrine, we shall forego discussing the real merits of the contention; the facts not showing any abuse of discretion whatever on the part of the trial court. To the contrary, the facts disclose a real necessity for the sale and its confirmation by the court.

The judgment of the trial court will therefore be affirmed, and it is so ordered.

ROBERTS, J., concurs.

RAYNOLDS, J., did not participate.