No. 49.—Edward Carey, assignee, &c. and others, plaintiffs in error, *vs.* Jno. M. Giles, Receiver, &c. defendant.

[1.] The constitutionality of the Acts of the Legislature of 1832 and 1833, authorizing the Governor to appoint a receiver to take charge of the assets of the Bank of Macon, and clothing him with power to maintain all suits at Law and in Equity in his own name, affirmed.

[2.] The appointment of a receiver, by the Legislature, to settle the affairs of an insolvent bank, is not a judicial act.

[3.] The remedy—the mode and manner of enforcing contracts is no part of their obligation, and is within the legislative control.

[4.] A solemn Act of the Government will not be set aside by the Courts, in a doubtful case. The incompatibility or repugnancy, between the Statute and the Constitution, must be clear and palpable.

[5.] Acts of a Legislature, constitutionally organized, are to be presumed constitutional, and it is only when they *manifestly* infringe some of the provisions of the Constitution, or violate the rights of the citizen, that their operation should be impeded by judicial power. Whenever this does happen, from inadvertence or other cause, it becomes the duty of the Courts to protect the citizen and vindicate the Constitution.

[6.] A Statute passed for the suppression of fraud, or to give a more speedy remedy for the recovery of a right, ought to be construed liberally—such construction being for the furtherance of justice.

In Equity, in Twiggs Superior Court. Decision by Judge Hansell, October Term, 1850.

The Bank of Columbus instituted suits in the County of Twiggs, against H. H. Tarver and others, to collect certain promissory notes transferred to the Bank of Columbus by the Bank of Macon, a short time before its failure.

Charles H. Rice, as the receiver of the assets of the Bank of Macon, pending these suits, filed a bill alleging the transfer of the notes to be fraudulent, and claiming the notes as a portion of the assets of the Bank of Macon. Pending the bill, viz: in November, 1849, Rice departed this life, and on the 4th day of April, 1850, the Governor, Geo. W. Towns, appointed John M. Giles, Esq. receiver, in the place and stead of said Rice, by virtue of an Act of the Legislature, passed on the 24th December,

1832.* Giles appeared and moved the Court (it being agreed by counsel that the question might be raised in this manner) to be made a party to this bill, and that the same be revived, &c. The Court granted the motion, and this decision is alleged to be erroneous.

W. DOUGHERTY, for plaintiffs in error.

S. T. BAILEY, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The Bank of Columbus, by Edward Carey, the assignee, instituted suit in Twiggs County against Hartwell H. Tarver and others, to collect certain notes transferred to the Columbus Bank by the Bank of Macon, a short time before its failure. One Rice, as the receiver of the Bank of Macon, appointed by the Governor, under the authority of the Legislature, pending said suits, filed his bill alleging said transfer to have been fraudulent, and claimed said notes as a portion of the assets of the Bank of Macon. In November, 1849, Rice died, and in April, 1850, John M. Giles was appointed by the Governor in his place. Mr. Giles prayed to be made a party complainant to the proceeding in Chancery, as successor of Rice, which application was resisted on the part of Edward Carey, as assignee of the Columbus Bank. It was agreed, however, that it might be done *on motion*, provided it could be done in any other way. Judge Hansell de-

---

*Extract from Act of 1832, forfeiting charter of Bank of Macon:

"Sec. II. His Excellency the Governor, immediately after the passing of this Act, [shall] appoint some fit and proper person to act as receiver of the assets of the Bank of Macon, and who shall be authorized to ask and receive from any person or persons holding any of said assets, and forthwith to collect the same and apply the proceeds to the redemption of the bills in circulation, so far as said proceeds shall be available; and further, that said individual shall give bond and security to His Excellency the Governor, and his successors in office, for the faithful performance of the duties of said office, and that said receiver report annually to His Excellency the Governor, his actings and doings, until the duties of his said office be completed."

termined that Mr. Giles could, by bill of review, be made a party; and to this decision counsel for Carey excepted.

[1.] The question in this case is narrowed down to an isolated point, namely : the constitutionality of the Acts of the General Assembly of 1832 and 1833. By the former, the the Governor was authorized to appoint some fit and proper person to act as receiver. See *Pamphlet Acts of* 1832, *p.* 28. But doubts having arisen as to the power of the receiver to sue in his own name, the ensuing Legislature clothed him with power and authority to bring any action or suit at Law or in Equity in his own name which he might deem necessary for the collection of all debts due and owing to the bank, &c. See *Pamphlet Acts of* 1833, *p.* 39. By the 13th section of the charter of the Bank of Macon, it is declared, that " if the bank shall at any time fail or refuse to redeem their notes in specie, and the same shall be protested before a Notary Public to the amount of $25,000, or if the notes or bills issued by said bank should depreciate and not pass currently without a discount on the same of ten per ·cent, or upwards, the Legislature, upon either of these facts being satisfactorily established or made known to them (without resorting to the Courts of Justice,) may pronounce the charter forfeited, and suspend all further operations of said bank; *Provided,* that nothing therein contained shall prevent said corporation, in case of forfeiture, from suing and collecting, in their corporate capacity, all debts previously due them, and of being sued and compelled to pay all debts due by said corporation." *Dawson's Compilation, p.* 74.

A committee was appointed in 1832 to investigate the condition of the Bank of Macon, who concluded their report by recommending a repeal of the Act incorporating said bank, both on account of its having failed to redeem its notes in specie, in terms of its charter, and because its bills were at that time at a discount of at least seventy-five per cent. From the report of the committee, it appeared that all or nearly all of the stock of the company had accumulated in the hands of one individual, and that he was dead and insolvent. From which facts, the conclusion is irresistible, that the corporation as such could never be

revived—I speak it with reverence—by any power short of that which raised up Lazarus from the grave. *Pamphlet Acts of* 1832, *pp.* 279, 280, 281, 282, 283, 284, 285, 286, 287, 288, 289, 290, 291, 292, 293, 294, 295.

Accordingly, the Legislature at the same session, by virtue of the right reserved to itself in the charter, and without waiting to have the delinquency of the bank judicially ascertained, after reciting in the preamble that the bank had failed and refused to redeem its notes in specie, and that the same had ceased to pass currently, and were then at a great depreciation, passed an Act declaring the charter to be null and void, and that the rights, privileges and immunities which had been granted should thenceforth cease, determine and be of no effect. They then proceed and annex the same *proviso* that is contained in the charter, as already quoted, namely: that nothing contained in this repealing Act shall prevent said corporation from suing and collecting, in their corporate capacity, all debts previously due them, and being sued and compelled to pay all debts due by said corporation, and, in the following section, authority is given to the Governor to appoint a receiver as already noticed.

No question is raised as to the right of the Legislature to repeal the charter. It is contended, however—

1st. That the appointment of a receiver is a judicial act; and

2d. That it impairs the obligation of contract, by taking from the bank the right secured to it by its charter of suing and being sued in its corporate capacity.

[2.] 1st. Was the appointment of a receiver a judicial act? If so, it is very clear that it could not be made by the Legislature, without violating an express provision of the Constitution. But it does not seem to us to be of this description of power. It was not a case of controversy between party and party; nor is there any decree or judgment affecting the title to property; it determines no right, legal or equitable. The receiver is merely to collect, hold and disburse the assets of the bank for the benefit of all concerned; and it is in the power of the Courts to direct and control him in the proper execution of his duties.

2d. Even admitting that the defunct corporation could be re-

vived so far as to organize a board of directors, and this was a contest between the company and the receiver as to the right to control the assets of the bank, I should entertain serious doubts whether the clause in the charter should be so construed as to give to the corporation, under the facts and circumstances of this case, the preference which is here claimed. It is very certain that the Legislature of 1832 did not believe that in the appointment of a receiver they were in any manner interfering with the rights of the corporation. For the identical clause in the charter, as to their right of suing and being sued in their corporate capacity, is expressly re-enacted in the repealing Act. For myself, I think that it was intended by the Legislature, and so understood by both parties at the time, that this provision in the charter was designed to prevent the operation of the ancient doctrine, that upon the dissolution of a corporation, all debts for and against it were extinguished, and that their property reverted to the donor or escheated to the government. It was to prevent this consequence, and for no other purpose, I apprehend, that this clause was inserted. But suppose that it is otherwise, and that it guaranties to the Bank the privilege which is claimed for it, is there any thing in the appointment of a receiver which necessarily interferes with this right? Who is it that is interposing this objection? Not the corporation itself, but a creditor of the bank. And how, I ask, is the Bank of Columbus prejudiced by this appointment? What interest of theirs is disturbed by it? On the other hand, it is due to the other creditors of this insolvent concern, that there should be somebody, *in esse,* to litigate with the Bank of Columbus respecting these assets. If the Columbus Bank has the better title to them, she will prevail; if she has not, she ought to be defeated. The appointment of the receiver is to preserve, not to divest rights. That it should be resisted by the debtors of the corporation and those who chance to hold its funds and effects, is natural enough. But that the creditors should insist that it is divesting vested rights, seems a a little unaccountable. The object is to fulfil contracts, not to violate them. Had the Legislature repealed this charter, without providing for the settlement of its affairs, they would have been

anything but the vigilant guardians of an innocent community. Better that this incurable cancer should have been let alone, to fester and feed upon the vitals of the body politic, than to have amputated it and taken no steps to bind up the wound. To have repealed the charter, without doing anything more, was to make bad worse.

But *McLaren vs. Pennington et al.* (1 *Paige's Rep.* 102,) is a case directly in point. While all the conservative doctrines in the *Bank of Columbia vs. Oakley,* (4 *Wheaton,* 236, 245,) *Young vs. The Bank of Alexandria,* (4 *Cranch,* 395,) and *Dartmouth College vs. Woodward,* (4 *Wheaton,* 518,) were re-affirmed by the learned Chancellor, yet he maintained, that notwithstanding there was no provision for the appointment of trustees by the Legislature, in the event of the dissolution of the charter, but, on the contrary, there was an express grant and stipulation that, in case of forfeiture, the officers of the bank should be the trustees to settle its affairs, still the Act of the Legislature, appointing other trustees and giving them control over all the property of the bank, was valid.

[3.] The remedy or mode and manner of enforcing contracts have never been considered as a part of their obligation, and have always been deemed within the legislative control.

[4.] If the constitutionality of the Acts of 1832 and 1833 was the least doubtful, it would be our duty to carry them into effect. To set them aside, their repugnancy to the Constitution should be most manifest. It is contrary to the practice and policy of this Court, as it should be of all others, rashly and lightly to pronounce void a solemn Act of the Government; the case must be clear to justify it.

[5.] "The question whether a law be void for its repugnance to the Constitution," said Chief Justice *Marshall,* in the case of *Fletcher and Peck,* "is at all times a question of great delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The opposition between the Law and the Constitution should be such that the Judge feels a clear and strong conviction of their incompatibility with each other." And in *Dartmouth College vs. Woodward,* the Court say, " on more than

one occasion the Court has expressed the cautious circumspection with which it approaches the consideration of such questions, and has declared that in no doubtful case would it pronounce a legislative Act to be contrary to the Constitution." In *Calder vs. Bull*, (3 *Dall. R.* 386,) the Chief Justice says : " If ever I exercise the jurisdiction, I will never decide any law to be void but in a very clear case." Again, in *Cooper vs. Telfair*, (4 *Dall. Rep.* 14,) the Court say, " to authorize this Court to pronounce any law to be void, it must be a clear, unequivocal breach of the Constitution—not a doubtful and argumentative implication." Such is uniformly *avowed* to be the governing principle with the Supreme Court of the United States—the highest judicial tribunal in the country. And the language of the English Judges, from the earliest history of the law, has been in accordance with the sentiments expressed by the Supreme Court.

[6.] Besides, it is a fundamental maxim of the Common Law, as laid down by Lord Bacon, and one which is never lost sight of by the Courts, that a Statute made for the suppression of a fraud, or to give a more speedy remedy for a right, ought to be construed liberally, because such construction is for the furtherance of justice. 6 *Bacon's Abr.* 389.

But we are averse to setting aside these Statutes, authorizing the appointment of a receiver, for another reason. Coeval with their passage, their constitutionality was sustained by the convention of Judges at Milledgeville.; and I may say of this Bench, without transgressing the bounds of truth, that our judicial hemisphere was illuminated at this epoch by a constellation of bright stars, whose effulgence has never been eclipsed at any period of our history.

The question came up in this form : G. B. Hargrove having been appointed receiver of the assets of the Bank of Macon, moved a rule *nisi* against Carlton B. Cole, Esq. in Bibb Superior Court, calling upon him to show cause why a rule absolute should not pass against him, to compel him to deliver over to the said receiver the assets of said bank, held in his hands as attorney at law. The rule absolute was resisted, on the grounds that the

Carey and others *vs.* Giles.

Act of the Legislature, repealing the charter of the Bank of Macon and appointing a receiver, was unconstitutional, and therefore void, *and that in no case could the Legislature take the control of the funds from the corporation and give it to a receiver; that no one but the corporation had the power to sue and collect their funds, and that all suits must be in the name of the corporation; and, furthermore, that the appointment of a receiver was a judicial act, and therefore his appointment was void, because it violated that clause of the Constitution which says the several departments of the government shall be kept separate.* I make this statement from the printed brief of S. S. Bailey, Esq. submitted to the convention on the occasion, and from which I learn, also, that his application in behalf of the receiver was opposed by the late Judge *Shorter*, and "*a multitude*" of the ablest counsel then at the bar. The decision was made, therefore, upon deliberation, and the most elaborate reference to authorities, and covers the identical points made in the bill of exceptions before us. Property has been conveyed, and titles executed, and settlements, involving a great variety of interests, have been made under it, for twenty years. To overturn it now, would produce incalculable mischief and confusion. We feel no inclination to do so; but, on the contrary, fully concur with that body in putting the seal of our approbation to the equitable and enlightened purpose of the Legislature, in taking the necessary and proper step which they did, to make the common fund of this corporation answerable for the debts which were created on the credit of that fund.

Upon the whole, we see no error in the record, and consequently affirm the judgment of the Circuit Court.