FRANK H. SMITH, commissioner of banking and insurance, petitioner,

*v.*

WASHINGTON CASUALTY INSURANCE COMPANY et al., defendants.

[Decided February 29th, 1932.]

*Mr. Pearce R. Franklin,* for the petitioner.

*Mr. Edward A. Schilling,* for the defendant.

*Mr. Morris H. & Mr. Charles E. Cohn,* for the creditors and stockholders.

BERRY, V. C.

The commissioner of banking and insurance has filed a petition reciting the incorporation and organization of the defendant company in December, 1927, under the insurance laws of this state; his determination in November, 1931, that the company was insolvent; that the continuation of its operation would be hazardous to the public, to its policy-holders, claimants or other creditors; the taking possession of the assets of said company by the commissioner pursuant to the provisions of chapter 244, *P. L. 1931;* that he is still in possession thereof, and is liquidating said assets pursuant to authority conferred upon him by law; that he has issued notice of the cancellation of policies of insurance issued by the company; that he is holding and administering the assets and business of the company as a trust fund and that he desires the aid, advice and instruction of this court in and about the administration of the trust; that although desirous of such advice and instructions he is not entitled thereto because he is not an officer of this court; that situations have arisen and will arise in the future with respect to which he

has no authority under the act, and that it is therefore necessary that this court assume jurisdiction of the trust. He then recites some of the problems which have arisen and prays the future advice of the court with reference thereto. He alleges that the statute under which he is operating provides no means for limiting the time within which claims against the company may be prosecuted and no means for barring creditors and invokes the jurisdiction of this court in that behalf.

The petition was filed January 29th, 1932. It seeks the usual injunction against the exercise of its privileges and franchises by the defendant company and the usual restraint issuing against insolvent corporations, their officers, directors, &c., authorized by the Insurance Company act and also by the General Corporation act. One prayer of the petition is "that this court take over the administration of said trust." Attached to the petition are a number of schedules, amongst which is one stating the *per diem* compensation of employes and assistants of the commissioner as heretofore fixed by him; another showing disbursements of the commissioner in the administration of his trust up to January 2d, 1932, and a list of so-called preferred salary claims, and he asks this court's approval of the salaries and compensation of the assistants, as heretofore fixed by him, the payment of preferred claims, and the approval of disbursements already made, as shown by said schedules. But no account of his administration thus far is presented.

Upon the filing of the petition, an order to show cause directed to the stockholders, policyholders, creditors, &c., returnable before the chancellor at Newark, was advised by Vice-Chancellor Buchanan. The matter, in due course, came on for hearing before me.

The administration by this court which is sought by this petition was stated by counsel for the petitioner to be that which was authorized by chapter 244, *P. L. 1931,* referred to in the petition. The intention of requesting the court to assume jurisdiction of the trust pursuant to any other authority was expressly disavowed. The application is an

unusual one and is the result of recent legislation. A somewhat similar petition, more limited in the scope of its prayers, was passed upon by Vice-Chancellor Buchanan in *In re Washington Casualty Insurance Co., &c., 109 N. J. Eq. 483.* In that petition the commissioner sought the advice and instruction of this court on certain questions which the vice-chancellor refused, pointing out that the commissioner of banking and insurance, although a trustee of the assets of the defunct company, was not an officer of this court and was not, therefore, entitled to the court's advice, stating "that is the province and duty of the attorney-general to whose assistance in this behalf the commissioner is presumably entitled." In that proceeding there was apparently no suggestion that the court of chancery take over the administration of the trust and under the circumstances the denial of the request for advice and instructions was undoubtedly entirely proper. The present application is, however, as already indicated, somewhat broader in its scope. The law under which the commissioner has taken possession of the defendant company is new and no previous analysis or interpretation thereof has been attempted. But in seeking the true meaning of the statute and the intention of the legislature in enacting it we are aided somewhat by previous judicial interpretations of similar legislation respecting trust companies, and by federal statutes authorizing the comptroller of the currency to take possession of and liquidate national banks.

An examination of the General Insurance act of 1902 (*2 Comp. Stat. p. 2854*) shows that section 56 of that act provided for direct application to the court of chancery by the commissioner of banking and insurance for the appointment of a receiver of an insolvent company. That section remained in force unchanged until 1930 when the legislature amended it by re-enacting the same section, of which that portion authorizing the appointment of a receiver became subsection A of the new act and by adding another subsection (B) which is substantially the same as subdivision A of the 1931 act. In 1931 this section of the act of 1902 was again amended and subsection A as it appeared in the 1930 act was elimi-

nated and substantially the language of section 65 of the General Corporation act was inserted as subsection B of the 1931 act. But by this subsection application to the court of chancery for a receiver is authorized only in case of the refusal of the commissioner of banking and insurance to act after he has been requested to do so by "any creditor or stockholder" of the insolvent company.

Before proceeding further, it should be noted that the general act concerning trust companies (Revision of 1899, *Comp. Stat. p. 5654* §§ *22, 23, 24, 25*), provided a somewhat more comprehensive scheme for the taking possession of insolvent trust companies by the commissioner of banking and insurance and the appointment of receivers thereof than was contained in the General Insurance act to which I have referred. Important amendments to the Trust Company act were made by the legislature in 1913. *P. L. 1913 p. 282; Cum. Supp. Comp. Stat. pp. 3750 et seq.* In 1930 the general act concerning insurance companies was amended to conform in its essential features to the Trust Company act as amended in 1913 (*P. L. 1930 ch. 68 p. 288; Cum. Supp. Comp. Stat. 1925 p. 848*), and in 1931 the legislature amended both the General Insurance act and the General Trust Company act in so far as they provided for the taking possession of insolvent institutions organized thereunder and their liquidation. See *P. L. 1931 ch. 244 p. 599,* and *P. L. 1931 ch. 255 p. 641.* These two amendatory acts are alike in all their essential features, as were the amendments to the Trust Company act in 1913 and the amendment to the Insurance Company act in 1930, and, therefore, decisions of our courts construing and interpreting the 1913 and the 1930 amendments are of importance in construing the 1931 amendments, both of which were evidently prompted by the same reasons and were undoubtedly adopted by the legislature in pursuance of a general plan with respect to financial institutions coming under the jurisdiction of the commissioner of banking and insurance. This thought is emphasized by the fact that in the same year the general act concerning banks and banking was amended to conform to the

Trust Company act (see *P. L. 1931 ch. 256 p. 650*) and similar amendments were also made to the general act concerning building and loan associations. See *P. L. 1931 ch. 254 p. 633*. A consideration of all this legislation is therefore necessary in order to determine the true meaning of chapter 244, *P. L. 1931,* and the intention of the legislature as therein expressed. A comparison of these legislative amendments with the federal statutes by which the comptroller of the currency is authorized to take over national banks and appoint receivers, and after which the amendment of 1913 was apparently modeled, is also helpful. The New Jersey amendatory acts to which I have referred indicate a legislative attempt to constitute the commissioner of banking and insurance a *"quasi-*judicial tribunal" in similar manner as the comptroller of the currency is so constituted (*9 U. S. Comp. Stat. (1916)* §§ *9746, 9756, 9821 et seq.* and notes *R. S. Sections*), and to provide for the submission to the court of chancery of certain questions touching the administration and liquidation of insolvent insurance companies. The congressional legislation conferring power on the comptroller and constituting him a *"quasi-*judicial tribunal" (held not unconstitutional as vesting the comptroller with judicial power in *Bushnell* v. *Leland, Receiver, 164 U. S. 684; 41 L. Ed. 598*), gives to the comptroller practically unlimited authority except in compounding debts and selling assets which require "an order of a court of record of competent jurisdiction." This has been held to include United States district courts. *In re Platt, Federal Case No. 11211.* But by the federal act "the courts are not vested with any general supervisory or directing power over the liquidation of insolvent national banks." *In re Earle, 92 Fed. Rep. 22.* And a receiver does not by filing a petition in the federal court for leave to sell property or compound bad or doubtful debts place assets of the bank in the custody of the court in the sense in which it has the custody of property in the hands of a receiver appointed by itself. *In re Chetwood, 165 U. S. 443; 41 L. Ed. 782.* But the present petition seeks to place the assets of the defendant company in the custody of this

court. A comparison of the federal legislation with that here under consideration indicates an attempt to confer on the commisisoner of banking and insurance a somewhat more limited jurisdiction over closed banks than is conferred by the federal act on the comptroller of the currency, and to impose upon the court of chancery somewhat broader powers and duties in connection with the administration of the affairs of the insolvent company than is conferred upon the federal courts.

A careful reading of chapter 244, *P. L. 1931,* shows that there are eleven separate and distinct matters over which the court of chancery may be asked to exercise its jurisdiction. With respect to some of these provisions the intention of the legislature is not altogether plain. The eleven matters are as follows:

1. Remove the automatic stay of executions and decrees.

2. Direct disposal of proceeds of sale of assets. (Note that the commissioner may sell such assets and compound debts without any authority of the court but cannot dispose of the proceeds of such assets without the court's approval, while in the 1930 act such approval of the court before sale was necessary, was required in the 1913 amendment to the Trust Company act, and is also required in the federal acts).

3. Give instructions to the commissioner of banking and insurance.

4. Approve compensation of assistants and expenses of administration.

5. Extend the time, for not more than three months, within which a suit may be brought against the insolvent company on any claim rejected by the commissioner.

6. Order the commissioner to pay dividends.

7. Dispose of objections to claims allowed by the commissioner.

8. "The court" (this court not named, but probably intended) may make "proper provision for unproved claims."

9. May hear complaints of the company against the commissioner and enjoin him if necessary.

10. After the payment of creditors by the commissioner

the court may direct distribution of the balance of funds in his hands.

11. In the event of the refusal of the commissioner to act after request to do so, a receiver may be appointed by this court upon the application of the attorney-general, creditors or stockholders.

It should also be noted that where stockholders decide to appoint their own agent to liquidate after the commissioner has paid all creditors, the expenses of such agent "shall be subject to the direction and control of a court of record of competent jurisdiction." The quoted clause is evidently copied *verbatim* from the federal statute. What court is meant is left open to conjecture.

At the oral argument on the return of the order to show cause the act under consideration (chapter 244, *P. L. 1931*) was attacked by counsel for some creditors and stockholders as unconstitutional and as violative of that portion of article 14 of the United States constitution which prohibits the taking of one's property without due process of law. The case of *National Automobile Service Corp.* v. *Barfod, Insurance Commissioner, 137 Atl. Rep. 601,* was cited as authority for that proposition. In that case the Pennsylvania supreme court held that an act which authorized the commissioner of banking and insurance to take possession of certain corporations under certain circumstances was unconstitutional and violative of the due process clause; but we are not obliged to consider the decisions of foreign jurisdictions in order to determine the validity of the act here involved. In *La Monte* v. *Lurich, 86 N. J. Eq. 26,* this court held the 1913 amendment to the Trust Company act constitutional and not violative of the due process clause of the constitution. The decision of this court in that case was affirmed by the court of errors and appeals (*86 N. J. Eq. 251*) on the opinion of Vice-Chancellor Stevens. Attention was there directed to the provision in that amendment that whenever the company of whose property and business the commissioner has taken possession deems itself aggrieved thereby, it may at any time within ten days after such taking possession apply to the

court of chancery to enjoin further proceedings, and that this had not been done. Similar provisions are contained in the 1931 amendment to the Insurance act, except that there is no time limit within which such action may be taken. See, also, *Roseville Trust Co.* v. *Mott, 85 N. J. Eq. 297.* See, also, *Boyd* v. *Schneider, 124 Fed. Rep. 239;* on appeal, *131 Fed. Rep. 223; Port Newark National Bank* v. *Waldron, 46 Fed. Rep. (2d) 296,* involving the construction of the federal act, and authorities therein cited. For decisions of other jurisdictions respecting similar statutes, see *State Savings and Commercial Bank* v. *Anderson, Cal. L. S. Court 165; affirmed, 238 U. S. 611; Koch* v. *Missouri Lincoln Trust Co. (Mo.) 181 S. W. Rep. 44; Carnegie Trust Co.* v. *Kress, 215 N. Y. 706; 109 N. E. Rep. 1068; Van Tuyl* v. *Scharmann, 208 N. Y. 53.*

The language of the 1913 amendment to the Trust Company act and chapter 244, *P. L. 1931,* are exactly alike in so far as the taking possession of the assets of the company by the commissioner of banking and insurance is concerned, and the New Jersey decisions holding the 1913 amendment constitutional, and to which I have referred, are dispositive of the constitutional question here. But it is obvious that the defendant company has not been deprived of its property, in the sense that the word "deprive" is used in the constitution. In fact, the corporation is not deprived of its property at all. The commissioner has merely taken possession of the property pursuant to the terms of the contract between the corporation and the state which gave it life. The Insurance act as it stood at the time of the incorporation of this company provided that under certain circumstances the directors would surrender possession of its property to the commissioner; but the state, in granting the charter, reserved to itself the power to abridge the rights of the corporation by amendment of the law under which incorporation was had. This it has done through its legislature. By acceptance of its charter the corporation assented to such abridgement. The commissioner's possession, under the amended act, is substituted for that of the directors and is for the corpora-

tion and its creditors. The corporation has not been divested of its title. The commissioner is merely a custodian. True, he may sell and dispose of the corporation's assets, but he does so by virtue of his statutory powers and in the name of the corporation the same as the directors would do had they retained their possession and powers. The corporate existence of the defendant company is not affected. It still lives. It may not be permitted to resume its business, but its life can be terminated only in the mode prescribed by statute, and until so terminated the title to its property, unless sold by the commissioner, remains intact, although in the physical possession of the commissioner. See *Roseville Trust Co.* v. *Barney, 89 N. J. Law 550.* Nor can the act be said to be unconstitutional as vesting the commissioner with judicial powers. *Bushnell* v. *Leland, Receiver, supra.* It has been held that the appointment of a receiver by the legislature to settle the affairs of an insolvent bank is not a judicial act, and not unconstitutional as impairing the obligation of contracts. *Carey* v. *Giles, 9 Ga. 253.*

I have already said that we are aided in our interpretation of the statute here under consideration by decisions of our courts involving the 1931 amendment of the Trust Company act and the 1930 amendment of the Insurance Company act.

In *Roseville Trust Co.* v. *Barney, supra,* Chancellor Walker, speaking for the court of errors and appeals, and referring to the 1913 amendment to the Trust Company act, said:

"Thus it will be seen that the act concerning trust companies contains two schemes for the winding up of such institutions, one by the commissioner of banking and insurance as a statutory agent, and the other by a receiver in insolvency proceedings. * * *

"Thus it appears that the commissioner of banking and insurance, as the act concerning trust companies originally stood, did not have the powers of a liquidator, but only power to take possession of the property and business of a trust company until the termination of an action or proceeding instituted by the attorney general, or until the appointment of a receiver by the court of chancery. * * *

"It will be observed that the winding up of an insolvent trust company, a proceeding essentially judicial in its nature, is confided to the court of chancery, while for corporate acts not in and of themselves amounting to insolvency, the commissioner of banking and insurance by section 22 of the Trust Company act, as amended, is authorized to take possession of the company's business and liquidate its affairs. He is not, like a receiver, vested with title to the corporation's property, nor empowered to sue or be sued in his name as commissioner, but only to act for the company and for the benefit of its creditors and stockholders, doing all lawful acts in the name of the company itself. During his administration of its affairs the corporate entity itself continues in existence, and everything done for and on its behalf by the commissioner, must be done in its name. The rights of creditors, at least so far as reducing their claims to judgment is concerned, are not affected by the act, which makes express provision that the commissioner, in the name of the company, may prosecute and defend all suits and other legal proceedings."

In *Sternberg* v. *Vineland Trust Co.*, decided by Vice-Chancellor Leaming on June 30th, 1930, but not officially reported, it was held that section 22 of the Trust Company act, as amended in 1913, did not authorize the commissioner to take possession in cases where the company is insolvent in the sense that its debts are in excess of its assets, but only where it is insolvent in the sense that it does not possess available resources to meet its present needs; that where a corporation was insolvent in the popular sense of that word, *i. e.*, "that it owes more money than its assets can ever be made to realize," then section 24 of the act applied and a receiver would be appointed; and that only by so interpreting the act could these two sections be reconciled. Vice-Chancellor Leaming's language in that case is recited at length by Vice-Chancellor Fallon in *Koch* v. *Morsemere Trust Co., 107 N. J. Eq. 516* (at *p. 521*). In this latter case Vice-Chancellor Fallon held that the commissioner's activities under section 22 of the Trust Company act were limited to

those institutions in which the assets of the trust company, after the payment of the expenses of liquidation, would be sufficient to pay all of its depositors and creditors (not including stockholders) in full. This case was decided February 2d, 1931, and immediately thereafter, apparently, steps were taken by the legislature to amend the Trust Company act and also the Insurance Company act; and they were amended, the Trust Company act by chapter 255, *P. L. 1931 p. 641,* approved April 27th, 1931, and the Insurance Company act by chapter 244, *P. L. 1931 p. 599,* approved April 27th, 1931. In construing statutes the primary rule is to ascertain and give effect to the intention of the legislature (*Commercial Trust Co.* v. *Hudson County Board of Taxation, 86 N. J. Law 424; affirmed, 87 N. J. Law 179; Clarkson* v. *Ley, 106 N. J. Law 380*) ; and the occasion and necessity of the law, the mischief felt, and the remedy in view are important factors for consideration. *Morris Canal and Banking Co.* v. *The Central Railroad Co., 16 N. J. Eq. 419; In re Merrill, 88 N. J. Eq. 261.* At the time of the adoption of these two amendatory acts it is presumed that the legislature had before it the two decisions of this court just referred to. It had already, in *Roseville Trust Co.* v. *Barney, supra,* been pointed out by the chancellor that the amendatory act of 1913 concerning trust companies contained two schemes for the winding up of such companies, one by the commissioner as a statutory agent, and the other by a receiver in insolvency proceedings. Vice-Chancellors Leaming and Fallon had indicated the cases to which the respective schemes applied; one, a technical insolvency; and the other, an absolute insolvency. Apparently the legislature thought best to broaden the powers of the commissioner to include both classes of insolvency, both as to trust companies and insurance companies, and to constitute the commissioner of banking and insurance a "statutory liquidator" in any case involving the financial stability of such companies, and to limit the previous right to apply to this court for the appointment of a receiver to those cases where, in the words of the act, "the commissioner * * * shall have refused,

upon demand, * * * to take possession of the property and business of the company." It should be noted that the right to apply for a receiver is limited by the 1931 amendments to the attorney-general, creditors and stockholders; or, in the case of mutual companies, to members in addition. The commissioner now has no express authority under the act to apply for a receiver.

Whether or not these amendatory acts were effective to deprive this court of its previous statutory jurisdiction, if any, to appoint a receiver under the authority of the General Corporation act need not now be decided. Previous pronouncements of this court and the court of errors and appeals have indicated that the General Corporation act is applicable, except as therein otherwise provided, to all corporations of this state. *Fitzgerald* v. *State Mutual Building and Loan Association, 74 N. J. Eq. 440* (at *p. 442*); *Pierce* v. *Old Dominion Copper Mining and Smelting Co., 67 N. J. Eq. 399* (at *p. 405*); *Cohn* v. *Colgan, 97 N. J. Eq. 9* (at *p. 11*). Section 2 of that act provides "that every corporation * * * shall be governed by the provisions and be subject to the restrictions and liabilities in this act contained, so far as the same are appropriate and *not inconsistent* with such charter or the act under which such corporation was formed." Similar provisions are contained in section 57 of the General Insurance act. Clearly the provisions of the General Corporation act respecting insolvency and dissolution are appropriate to a corporation formed under the General Insurance act; but are they consistent with the provisions of that act respecting insolvency and dissolution? The rule that where the legislature has adopted an act designed to apply to a particular class of corporations that act and not the General Corporation act should control may have some bearing on the question, although the limitations of that rule have not been clearly defined. *State* v. *Atlantic City and Shore Railroad Co., 77 N. J. Law 465* (at *p. 479*). But whatever authority this court has to appoint an insolvency receiver to wind up the affairs of a corporation and decree its dissolution, is of statutory origin. It has no inherent

equity power to do so. *Attorney-General* v. *Stevens, 1 N. J. Eq. 369; National Docks Railway Co.* v. *Central Railroad Co., 32 N. J. Eq. 755; Jersey City Gaslight Co.* v. *The Consumers' Gas Co., 40 N. J. Eq. 427; Vanderbilt* v. *Central Railroad Co., 43 N. J. Eq. 669; Atlantic Trust Co.* v. *Consolidated Electric Storage Co., 49 N. J. Eq. 402; Cogan* v. *Conover Manufacturing Co., 69 N. J. Eq. 358; Bull* v. *International Power Co., 84 N. J. Eq. 209; 23 R. C. L. tit. "Receivers"* § *31; High Rec.* § *288.*

The statutory proceeding for the appointment of a receiver of an insolvent corporation is a sort of an equitable *quo warranto* designed to destroy the corporate existence and not to preserve it. The history of the statutory jurisdiction of this court is reviewed by Vice-Chancellor Stevenson in *Gallagher* v. *Asphalt Company of America, 65 N. J. Eq. 258,* and *67 N. J. Eq. 441,* and in *Pierce* v. *Old Dominion Copper Mining and Smelting Co., supra.* See, also, *Vanderbilt* v. *Central Railroad Co., supra.*

The inherent equitable jurisdiction of this court to appoint a receiver of a corporation is limited to the appointment of custodial receivers whose function is to preserve and not to destroy. *Sternberg* v. *Wolff, 56 N. J. Eq. 389, 555; Morse* v. *Metropolitan Steamship Co., 88 N. J. Eq. 325; Atwater* v. *Baskerville, 89 N. J. Eq. 121; In re New Jersey Refrigerating Co., 95 N. J. Eq. 215.* This inherent jurisdiction is of ancient origin and was exercised in England as early as the reign of Edward VI, in the sixteenth century. *23 R. C. L. tit. "Receivers"* § *32; 23 Am. & Eng. Encycl L. 1002* and notes. Of that jurisdiction the legislature cannot deprive this court. *Harris* v. *Vanderveer's Executor, 21 N. J. Eq. 424; Flanigan* v. *Guggenheim Smelting Co., 63 N. J. Law 647; West Jersey and Seashore Railroad Co.* v. *Atlantic City and Suburban Traction Co., 65 N. J. Eq. 613.* This power does not and never did depend upon statute nor upon the character of the parties, whether individuals or corporations, nor upon the nature of the property. *23 Am. & Eng. Encycl. L. 1004.* But there is a plain distinction between the appointment of a custodial receiver of a corpora-

tion pursuant to the court's general equity powers, and the appointment of a statutory receiver. The appointment of a custodial receiver is a *pendente lite* appointment, does not vest title to the corporate assets in the receiver, and does not require dissolution of the corporation. On the other hand, such title vests in a statutory receiver and the dissolution of the corporation by decree of the court usually, but not always, follows. Custodial receivers were appointed in *Sternberg* v. *Vineland Trust Co., 107 N. J. Eq. 255,* but the appointment was later vacated. The commissioner, under the provisions of chapter 244, is a "statutory liquidator," and is, in effect, a custodial receiver except that he is a receiver by statute rather than by appointment of this court. See *Roseville Trust Co. v. Barney, supra.* This court also has inherent jurisdiction over all trusts. *Trustees of Sea Isle City Realty Co.* v. *First National Bank of Ocean City, 87 N. J. Eq. 84; 1 Pom. Eq. Jur.* § *151.*

A trust is involved here. The commissioner is undoubtedly a trustee. His trust has been likened to a testamentary trust. At the oral argument on the return of the order to show cause, I expressed some doubt as to the right or power of this court to take over the administration of this trust except by the appointment of its own trustee through whom it might act. But whether or not this court, under the act, may instruct this trustee respecting his activities, and, if so, to what extent, need present no obstacle. The inherent jurisdiction of this court over trusts extends to the appointment of trustees where necessary.

The commissioner asks that this court "take over the administration of said trust." How that can be done unless the commissioner surrenders his administration under the statute is difficult to perceive. There cannot be two administrations at the same time—one by a "statutory liquidator" and the other by the chancellor. Choice must be had between the two. If it be considered that the filing of the petition by the commissioner is in effect a surrender of his trust, which is his undoubted privilege (*Green* v. *Blackwell, 31 N. J. Eq. 37*), and that the trust has, therefore, become vacant, still

138

no obstacle is presented, as "it is a rule which admits of no exception that equity never allows a trust to fail for want of a trustee." *26 R. C. L. 1273 tit. "Trusts"* § *123.* See, also, *3 Pom. Eq. Jur.* §§ *988, 1007, 1026.*

The commissioner alleges in his petition that the act under which he has taken possession is defective in that it has not conferred upon him complete authority to meet all contingencies of his administration that have arisen and will, in the future, arise. It is plain from the preceding recital of the matters which are referrable to this court under the act that it confers scant authority on the court of chancery for the administration of such a trust as this. It would appear, therefore, that the act does not confer complete authority for such administration upon either the commissioner or this court. In view of the commissioner's request that this court assume the administration of the trust and his alleged inability to do so under the act, the only logical way out, it seems to me, is to consider the trust relinquished and to appoint a new trustee under the court's general equity powers. This would be the appropriate course in a testamentary trust where the trustee refused or was unable to act. The obvious intention of the legislature being that the commissioner should actually wind up the affairs of an insolvent insurance company, practical effect should and may be given to this intention by appointing the commissioner himself as such trustee or by appointing the commissioner as one of two or more such trustees. I think it is fairly inferrable from the specific reference to the General Corporation act in subsection B of the act here involved that if and when this court assumes jurisdiction of the administration of a trust arising under the provisions of chapter 244, *P. L. 1931,* the practice should conform as nearly as practicable to that provided for under the General Corporation act in cases of insolvent corporations, and subject, of course, to such general equitable principles as under the circumstances may be applicable.

The measure of the relief to be granted to the petitioner on the present petition may now be considered.

In view of the assumption of the administration of the

trust by this court the first two questions asked in paragraph 13 of the petition need not be answered. The contingencies there referred to will not arise. Nor will the remaining questions propounded in said paragraph be answered by the court at this time. For the advice thereby sought the commissioner is referred to the attorney-general or such other counsel as he may have. Under the 1930 act the compounding of debts, and also the sale of assets, could be effected by the commissioner only upon an order of this court. That was the course pursued in *Sternberg* v. *Vineland Trust Co., supra.* The legislature evidently thought this procedure unnecessary and by the 1931 amendment conferred upon the commissioner complete authority to compound debts and sell and convey assets in the name of the company, without authority from this court, such authority being required only for disposal of the proceeds of such assets. But notwithstanding this provision, if this court assumes jurisdiction of the trust here involved, the orders and plans referred to in paragraph 13 of the petition should be passed upon by the court only when submitted according to the usual practice pursued here by trustees and receivers.

An order limiting creditors will be advised. This court undoubtedly has the right to issue such an order under its general equity powers. *William Filene's Sons Co.* v. *Weed,* *245 U. S. 597, 602; 62 L. Ed. 497, 504; Pennsylvania Steel Co.* v. *New York City Railway Co., 198 Fed. Rep. 721, 741; 117 C. C. A. 503, 523; Evans* v. *Illinois Surety Co., 298 Ill. 101; 131 N. E. Rep. 262, 266, 267.* "Equality is equity."

With respect to the request of the commissioner for the approval of compensation fixed for his various employes and assistants and for the approval of expenditures already made it should be noted that there is no account filed with the petition and no information whatever from which the court might determine the reasonableness or necessity of the employment of such assistants, or the reasonableness and propriety of the compensation which has been fixed by the commissioner. In *Tuttle* v. *State Mutual Life Insurance Co., 3 N. J. Mis. R. 281* (at *p. 284*), Vice-Chancellor Buchanan said:

"Expenditure along the lines mentioned was undoubtedly required, but it is the duty of the court to the creditors to satisfy itself that such expenditures, so far as they are to be charged against the funds which would otherwise go to the creditors, have not exceeded the needs or reasonable proprieties of the case as to amount and duration of continuance."

This language well applies to the situation here. There is nothing before the court upon which it can base its judgment but as the act seems to contemplate the fixing and approval of compensation before the administration has been completed and not after, and inasmuch as the commissioner has now requested it, a reference to a master will be made to inquire into the necessity for the appointment of the named employes and assistants and report as to such necessity and the reasonableness of the compensation already fixed and also as to the probable duration of their necessary employment.

The prayer for injunction is denied.

There is no inherent power in this court to enjoin the company from the exercise of its franchises or to enjoin the prosecution of suits against the company. The rights of creditors, so far as reducing their claims to judgment is concerned, are not affected by the possession of the commissioner (*Roseville Trust Co.* v. *Barney, supra*), except that the act automatically stays judgments, executions, levies, &c., and the assumption of the administration of the trust by this court does not alter this situation. The court of chancery cannot decree dissolution except by authority of the legislature and that power has not been conferred with respect to corporations of the character of the defendant.

### ADDENDUM.

Since the foregoing opinion was written, my attention has been called to the opinion of Vice-Chancellor Buchanan in *Smith, Commissioner,* v. *Monmouth Title and Mortgage Guarantee Co., 110 N. J. Eq. 117,* which has just been filed, in which he holds that the court of chancery has no authority

under the provisions of the General Corporation act to appoint a receiver of a corporation organized under the General Insurance act, or to enjoin it in the exercise of its franchises.